807 A.2d 890

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Earnest GATLING, Appellee.**

Supreme Court of Pennsylvania.

Argued April 8, 2002.

Decided Oct. 1, 2002.

36

Catherine Lynn Marshall, Philadelphia, for Com.

John P. Cotter, Philadelphia, for Earnest Gatling.

Peter Rosalsky, Philadelphia, for Defender Ass'n of Philadelphia, amicus curiae.

## OPINION ANNOUNCING THE JUDGMENT
## OF THE COURT

Justice NEWMAN.

The Commonwealth of Pennsylvania (Commonwealth) appeals from an Order of the Superior Court that vacated the Judgment of Sentence imposed by the Court of Common Pleas of Philadelphia County (trial court) on Ernest Gatling (Gatling) for his convictions of indecent assault, statutory sexual assault, and two counts of corruption of a minor. The Superior Court concluded that the trial court erred in failing to merge one of the corruption of a minor convictions with the statutory sexual assault charge. For the reasons set forth herein, we reverse the Order of the Superior Court and reinstate the sentence imposed by the trial court.

### FACTS AND PROCEDURAL HISTORY

During September and October of 1996, Gatling was a guest in the family home of J.N., the victim, who was eleven (11) years old at the time. Gatling, a friend of J.N.'s mother, grandmother, and uncle, lived in the basement of the house. At some time in September of 1996, Gatling, then twenty-seven (27) years of age, summoned J.N. to the basement, told the child to lie face down on the couch, climbed on top of her, and while both were still clothed, Gatling began pushing with his penis against her buttocks. After approximately four or five minutes, Gatling got up and J.N. climbed back upstairs; J.N. did not tell anyone what had happened.

A few weeks later, in mid-October 1996, Gatling again called J.N. into the basement. He once more told the girl to lie face down on the couch, whereupon he climbed on top of her, while both were clothed, and again began pushing with his penis against her buttocks. However, this time, Gatling told J.N. to turn over, at which point he pulled down her pants, then his own, and proceeded to engage in sexual intercourse with her. When again Gatling had finished, J.N. went back upstairs and told no one. A few days later, J.N.'s teacher found a note on the floor of the classroom that J.N. had written to Gatling. The teacher spoke to J.N. and informed the school principal,

who contacted the family of J.N. and the police. The police brought J.N. to St. Christopher's Hospital for Children, where a pelvic exam revealed tears in and beyond J.N.'s hymen, which are consistent with vaginal penetration.

Based on the above evidence, a jury found Gatling guilty of indecent assault [1] and corruption of a minor [2] with regard to the September incident and guilty of statutory sexual assault [3] and corruption of a minor with regard to the mid-October incident. The jury acquitted Gatling of rape,[4] two counts of endangering the welfare of children,[5] and an additional count of indecent assault.[6] The court sentenced Gatling to twenty-one (21) to forty-two (42) months imprisonment for statutory sexual assault consecutive to a term of six (6) to twelve (12) months imprisonment on the corruption of a minor conviction.[7] (Notes of Testimony (N.T.) 1/16/98, page 34). The court suspended sentencing on the indecent assault conviction arising from the September incident. (N.T. 1/16/98, page 37). Accordingly, the trial court imposed an aggregate sentence of twenty-seven (27) to fifty-four (54) months.[8]

1. 18 Pa.C.S. § 3126(a)(7).

2. 18 Pa.C.S. § 6301(a)(1).

3. 18 Pa.C.S. § 3122.1.

4. 18 Pa.C.S. § 3121(a)(6).

5. 18 Pa.C.S. § 4304.

6. The Commonwealth withdrew two counts each of simple assault, 18 Pa.C.S. § 2701, reckless endangerment, 18 Pa.C.S. § 2705, false imprisonment, 18 Pa.C.S. § 2903, and unlawful restraint, 18 Pa.C.S. § 2902, and one count each of indecent exposure, 18 Pa.C.S. § 3127, and voluntary deviate sexual intercourse, 18 Pa.C.S. § 3124.

7. It is unclear from the Record whether the trial court sentenced Gatling to a term of six (6) to twelve (12) months for the corruption of a minor conviction stemming from the October events or whether the court sentenced Gatling to two (2) consecutive terms of three (3) to six (6) months for each of the two (2) corruption of a minor convictions.

8. In its Pennsylvania Rule of Appellate Procedure 1925(a) Opinion, the trial court stated that it sentenced Gatling to fifteen (15) to thirty (30) months imprisonment for the statutory sexual assault conviction and three (3) to six (6) months imprisonment each for the indecent assault and two (2) corruption of a minor convictions. However, based upon the portions of the Record cited above, it appears as though the trial court erred in this recapitulation of the sentence it imposed on Gatling.

Gatling appealed to the Superior Court, which consolidated his appeal with *Commonwealth v. Smith*, No. 477 PHL 1998, to address whether the crimes of statutory sexual assault and corruption of a minor merge for sentencing purposes. In a published, *en banc* Opinion, the Superior Court vacated the Judgment of Sentence imposed by the trial court on Gatling and remanded the matter for re-sentencing. *Commonwealth v. Smith*, 772 A.2d 75 (Pa.Super.2001) (*en banc*), *petition for allowance of appeal granted in part sub nom. Commonwealth v. Gaitling*, 566 Pa. 238, 780 A.2d 605 (2001). The Superior Court majority held that "[t]he crimes of statutory sexual assault and corruption of a minor by their elements are not greater and lesser included offenses and, thus, convictions of both of these crimes do not necessarily merge for sentencing purposes ... however, the facts underlying [Gatling's] conviction mandate the conclusion that these particular sentences must merge." *Id.* at 84. The Superior Court majority reasoned that Gatling committed a single criminal act; the majority found that the elements of corruption of a minor, under the facts in the present case, were subsumed within the elements of statutory sexual assault and that "neither offense requires proof which the other does not." *Id.* at 81 (quoting *Commonwealth v. Comer*, 552 Pa. 527, 716 A.2d 593, 599 (1998)).

Judge Joyce filed a Concurring Opinion in which he argued that the crimes of statutory sexual assault and corruption of a minor should merge as a matter of law because they are greater and lesser-included offenses. Judge Joyce reasoned that "[s]tatutory sexual assault requires that [the defendant] engage in sexual intercourse with a minor less than sixteen. Corruption of a minor requires that [the defendant] engage in sexual intercourse that corrupted or tended to corrupt a minor under the age of eighteen." *Smith*, 772 A.2d at 85 (Joyce, J., dissenting). President Judge Del Sole filed a Concurring and Dissenting Opinion, joined by Judges Hudock, Stevens, and

Because we affirm the Judgment of Sentence of twenty-seven (27) to fifty-four (54) months imprisonment, which we find to be a legal sentence, this error is harmless.

Orie Melvin, in which he posited that the mid-October episode consisted of two separate criminal acts, rendering merger analysis inapposite because the guilty verdicts for the two crimes were based on separate and distinct facts.

We granted allocatur to discuss whether the crimes of statutory sexual assault and corruption of a minor should merge in the case *sub judice* and specifically, "whether merger was precluded for the purpose of avoiding a 'volume discount' for multiple criminal acts under this Court's decision in *Commonwealth v. Belsar,* 544 Pa. 346, 676 A.2d 632 (1996)." *Commonwealth v. Gaitling,* 566 Pa. 238, 780 A.2d 605 (2001).

## DISCUSSION

The doctrine of merger in Pennsylvania has its genesis in the decision of this Court in *Harman v. Commonwealth,* 12 Serg. & Rawle 69, 1824 WL 2417 (Pa.1824). In that case, the Commonwealth charged the defendant with both rape and assault with intent to ravish; the court found the defendant guilty, generally. The court sentenced the defendant for rape only. The defendant appealed, alleging, *inter alia,* that the trial court erred in joining the misdemeanor assault charge with the felony rape indictment; at the time, joinder of a felony with a misdemeanor was illegal. We rejected this argument, reasoning as follows:

> The defendant was found guilty of rape, and received the judgment which the law has ordained for that offence. He was subject to no inconvenience or hardship on his trial; being charged with felony, he was admitted to his privilege of peremptory challenge. There could be no surprise on him, nor any difficulty in defending himself against both charges. Indeed, if he was guilty of the rape, he must have been guilty of the assault, with intent to ravish; and if he was not guilty of the assault, with the intent to ravish, he could not be guilty of the rape: so that when he prepared for defence against one event, he must necessarily prepare for defence against the other. It would have been unjust, however, to punish him for the assault, which was **merged** in the greater offence of rape, and therefore, he was not punished for it.

*Harman,* 1824 WL 2417 at *4 (emphasis added). The merger doctrine developed to prevent punishing a defendant more than once for one criminal act. *See Commonwealth v. Brown,* 346 Pa. 192, 29 A.2d 793, 796 (1943) (to hold that a defendant can be subject to prosecution under different penal provisions for the same act "is to eschew the ideal of precision in criminal law and criminal penalties").

In the case at bar, the Commonwealth contends that the Superior Court erred in merging the convictions of statutory sexual assault and corruption of a minor. The Commonwealth relies on *Belsar* for the proposition that a court should not merge sentences where such action would provide the criminal defendant with a "volume discount" on crime. *Accord Commonwealth v. Anderson,* 538 Pa. 574, 650 A.2d 20, 22 (1994), *modified,* 539 Pa. 476, 653 A.2d 615 (1994) ("If multiple acts of criminal violence were regarded as part of one larger criminal transaction or encounter which is punishable only as one crime, then there would be no legally recognized difference between a criminal who robs someone at gunpoint and a criminal who robs the person and during the same transaction or encounter pistol whips him in order to effect the robbery"). The Commonwealth submits that, in the case *sub judice,* merging the crimes for which the jury convicted Gatling arising from the mid-October 1996 events, gives Gatling a volume discount for criminal acts that exceeded a solitary offense, even if the elements of the offenses could otherwise merge. Gatling counters that the occurrence of mid-October constituted one criminal act, for which he can be convicted of only one crime.

■ "Generally, the doctrine of merger is a rule of statutory construction designed to determine whether the legislature intended for the punishment of one offense to encompass that for another offense arising from the same criminal act or transaction." *Commonwealth v. Collins,* 564 Pa. 144, 764 A.2d 1056, 1057 (2001). In 1989, we attempted to reconstruct our merger doctrine in the cases of *Commonwealth v. Leon Williams,* 521 Pa. 556, 559 A.2d 25 (1989), and *Commonwealth v. Weakland,* 521 Pa. 353, 555 A.2d 1228 (1989). In *Leon*

*Williams,* the defendant grabbed a woman from behind, choked her, threw her to the ground, beat her, and attempted to rob her. A jury convicted the defendant of unlawful restraint, aggravated assault, and attempted robbery. The Superior Court had vacated the Judgment of Sentence, contending that the facts of the aggravated assault and attempted robbery "necessarily included the unlawful restraint so that proof of both the aggravated assault and the attempted robbery required proof of the acts upon which the unlawful restraint conviction is predicated." *Id.* at 27. The Superior Court had relied on *Commonwealth v. Michael Williams,* 514 Pa. 124, 522 A.2d 1095 (1987), *cert. denied,* 487 U.S. 1208, 108 S.Ct. 2852, 101 L.Ed.2d 889 (1988), in which this Court created the following test:

> [M]erger is required only when two prerequisites are met. First, the crimes must "necessarily involve" one another. Second, even if the two crimes necessarily involve one another, they do not merge if there are substantially different interests of the Commonwealth at stake and the defendant's act has injured each interest.

*Id.* at 1101. Crimes "necessarily involved" each other if one was a lesser-included offense of the other or if the facts of the case were such that the same facts established two or more criminal charges, even if the elements of the crimes differed. However, in *Leon Williams,* we reversed the Superior Court and rejected this approach to questions of merger:

> [W]e now hold that **except for lesser included offenses,** the doctrine of merger based on whether the Commonwealth has an interest in prosecuting a criminal defendant for more than one crime is hereby abrogated and abolished. It follows, therefore, that the crimes of aggravated assault and unlawful restraint in the instant case do not merge, for one of these crimes is not a lesser included offense of the other, and there is no argument, apart from the interest analysis, in favor of their merger.

*Leon Williams,* 559 A.2d at 29 (emphasis added).

In *Weakland,* the defendant and his brother conspired to rob a service station owned by Cecil and Florence Rash.

Weakland entered the station, struck Cecil with a wrench, and removed fifty-one dollars ($51.00) from Cecil's pocket. He then entered the station office, tore the telephone from the wall, assaulted Florence, and threw her to the ground. The two brothers took various items from the station and placed them in their car when Florence began to yell for help. Weakland approached Florence, at which point Cecil emerged with a gun and told Weakland not to hurt Florence. Cecil fired at Weakland, striking him in the leg. Weakland then threw a trashcan at Cecil, after which Weakland rushed Cecil and the two men wrestled for control of the gun. Weakland got the gun, fired at Florence, injuring her fingers and arm, and then fired twice at Cecil, killing him. Weakland then struck a bystander, Wilson, in the head with the gun. The two struggled, but stopped when Weakland informed Wilson that he did not want to have to kill him. Wilson responded that he did not want to be killed, but Weakland again struck Wilson in the face with the gun, forced Wilson into Wilson's car, and ordered Wilson to drive away from the station with Weakland in the vehicle. Soon after they left the premises, Weakland forced Wilson from the car and used it to escape. Weakland pled guilty to two counts of robbery and one count of conspiracy, and pled *nolo contendre* to one count of kidnapping, four counts of aggravated assault, one count of theft, and a general charge of homicide. Following a degree of guilt hearing, the trial court found Weakland guilty of first-degree murder. The court sentenced Weakland to life imprisonment for murder and a consecutive term of fifty-three-and-one-half (53½) to one-hundred-seven (107) years imprisonment on the remaining charges.

The Superior Court affirmed the Judgment of Sentence and we denied allocatur, so Weakland sought post-conviction relief, which the trial court denied. The Superior Court, however, granted partial post-conviction relief, finding that two of the aggravated assaults against Florence merged with each other and the aggravated assault against Wilson merged into the kidnapping of Wilson. We granted the Commonwealth's petition for allowance of appeal to address, *inter alia*, whether the

Superior Court properly merged the aggravated assault of Wilson into the kidnapping of Wilson. In *Weakland,* we held that "if a person commits one act of criminal violence, and that act is the only basis upon which he may be convicted of another crime, the act will merge into the other crime." *Weakland,* 555 A.2d at 1233 (hereinafter, "the first part of the *Weakland* rule"). We continued that where "the actor commits multiple criminal acts beyond that which is necessary to establish the bare elements of the additional crime, then the actor will be guilty of multiple crimes which do not merge for sentencing purposes." *Id.* (hereinafter, "the second part of the *Weakland* rule"). We refused to merge the convictions "because the act of holding [Wilson] at gunpoint was separate and apart from the aggravated assault and was sufficient to supply the element of threat necessary for the kidnapping conviction." *Id.*

In *Commonwealth v. Anderson,* 538 Pa. 574, 650 A.2d 20 (1994), we clarified our stance on merger. Anderson shot a woman in the neck; the victim is now a quadriplegic. A jury convicted Anderson of aggravated assault, attempted murder, and possession of an instrument of crime, upon which the trial court sentenced the defendant consecutively. The Superior Court, *en banc,* affirmed the Judgment of Sentence above a vigorous dissent, which argued that because aggravated assault is a lesser-included offense of attempted murder and because the crimes both stemmed from a single criminal act, Anderson should not be punished more than once for the same criminal act. We reversed the Superior Court, finding that aggravated assault is a lesser-included offense of attempted murder. "Whether the criminals in these cases committed one act or many is of no import. In either event, so long as the crimes are not greater and lesser included offenses, they are liable for as many crimes as they are convicted of and may be sentenced for each such crime." *Id.* at 22.

> Our concern ... is to avoid giving criminals a "volume discount" on crime. If multiple acts of criminal violence were regarded as part of one larger criminal transaction or encounter which is punishable only as one crime, then there

would be no legally recognized difference between a criminal who robs someone at gunpoint and a criminal who robs the person and during the same transaction or encounter pistol whips him in order to effect the robbery. But in Pennsylvania, there is a legally recognized difference between these two crimes. The criminal in the latter case may be convicted of more than one crime and sentences for each conviction may be imposed where the crimes are not greater and lesser included offenses.

*Id.* We explained that "[o]ur inquiry ... is whether the elements of the lesser crime are all included within the elements of the greater crime, and the greater offense includes at least one additional element which is different, in which case the sentences merge, or whether both crimes require proof of at least one element which the other does not, in which case the sentences do not merge." *Id.* at 24.

Thus, *Anderson* rejected the first part of the *Weakland* rule, that one single criminal act can never form the basis for more than one crime. We further held "that in all criminal cases, the same facts may support multiple convictions and separate sentences for each conviction except in cases where the offenses are greater and lesser included offenses." *Anderson*, 650 A.2d at 22. " 'The same facts' means any act or acts which the accused has performed and any intent which the accused has manifested, regardless of whether these acts and intents are part of one criminal plan, scheme, transaction or encounter, or multiple criminal plans, schemes[,] transactions or encounters." *Id.*

In *Commonwealth v. Belsar*, 544 Pa. 346, 676 A.2d 632 (1996), the defendant shot the victim five times, hitting him in the chest, stomach, upper arm, and hand. After the shooting, Belsar and a confederate attempted to locate the victim's car keys so that they could flee, but they soon realized that the victim was still alive and crawling for help. At that point, Belsar and his confederate began kicking the victim, but the victim began to scream to passers-by, so Belsar and his confederate ran away from the scene. A jury convicted Belsar of two counts of aggravated assault (inflicting serious

bodily injury and inflicting bodily injury with a deadly weapon), attempted murder, robbery, and conspiracy. The Superior Court affirmed the Judgment of Sentence and we granted allocatur to address, *inter alia*, whether the crime of aggravated assault by inflicting serious bodily injury (the kicking incident) merges into the crime of attempted murder (the shooting incident).

In *Belsar*, we reaffirmed the second part of the *Weakland* rule, specifically that where "the actor commits multiple criminal acts beyond that which is necessary to establish the bare elements of the additional crime, then the actor will be guilty of multiple crimes which do not merge for sentencing purposes." *Belsar*, 676 A.2d at 634 (quoting *Weakland*, 555 A.2d at 1233). Considering the facts in *Belsar*, we determined that merger was inappropriate because "the kicking attack was a separate incident that exceeded that which was necessary to accomplish the attempted murder." *Id.* We reasoned that "[i]f the sentence for the kicking-aggravated assault were to merge with the sentence for attempted murder, the merger would implicate the "volume discount" on crime which we discussed in *Anderson* . . . ." *Id.* We explained that "[w]hen a criminal act has been committed, broken off, and then resumed, at least two crimes have occurred and sentences may be imposed for each. To hold that multiple assaults constitute only one crime is to invite criminals like Belsar to brutalize their victims with impunity." *Id.* In effect, we determined that there was a break between the act of shooting the victim (attempted murder) and the latter act of kicking him (aggravated assault), and that the facts on which the conviction for attempted murder was based were completely distinct from the facts on which the court convicted Belsar of aggravated assault.

In *Commonwealth v. Comer*, 552 Pa. 527, 716 A.2d 593 (1998), the defendant and Matt Engler (Engler) left a party shortly after midnight on July 29, 1992, to drive to a bar. The defendant was speeding when his right tire began to rub against the curb, at which point the vehicle left the roadway, drove through a SEPTA bus stand, and struck a brick wall.

Justin Freeland (Freeland) and Carol Velozzi (Velozzi) were waiting for a bus when the car crashed through the SEPTA stand; Freeland died and Velozzi suffered a broken leg. The trial court convicted Comer of both involuntary manslaughter and homicide by vehicle in the death of Freeland. The Superior Court refused to merge these two offenses, relying on *Anderson* for the proposition that to determine whether one offense is a lesser-included offense of the other, the court must compare the statutory elements without regard to the facts in the case. The Superior Court reasoned that homicide by vehicle required a violation of the Vehicle Code and involuntary manslaughter required a higher degree of culpability. We reversed, finding that the elements of homicide by vehicle as charged were subsumed within the elements of involuntary manslaughter and we found that neither offense required proof that the other did not, because the same act, recklessly driving the vehicle into the bus stand, "supports both the general element of the 'commission of a reckless act' of involuntary manslaughter and the specific requirement of a Vehicle Code violation of homicide by vehicle." *Comer*, 716 A.2d at 599.

Finally, in *Commonwealth v. Collins*, 564 Pa. 144, 764 A.2d 1056 (2001), we retracted slightly from our holding in *Comer*. On September 30, 1995, Collins got into a car accident in which a passenger in his car was killed and another passenger suffered serious injuries. A jury convicted Collins of involuntary manslaughter, driving under the influence (DUI), homicide by vehicle, homicide by vehicle/DUI, and recklessly endangering another person. The trial court sentenced Collins to consecutive terms for homicide by vehicle, homicide by vehicle/DUI, and recklessly endangering another person; the court determined that the involuntary manslaughter and DUI convictions merged into the other crimes for sentencing. The Superior Court affirmed the Judgment of Sentence, rejecting the request of Collins to merge homicide by vehicle and homicide by vehicle/DUI. We affirmed, reasoning that "[a]lthough *Comer* allows us to look at the elements as charged in the circumstances of the case, it does not permit us to view the

circumstances so broadly that we redefine the elements of the crime." *Collins*, 764 A.2d at 1059. We held that the two crimes were mutually exclusive because homicide by vehicle required a conviction of a non-DUI Vehicle Code offense, while homicide by vehicle/DUI required a DUI conviction. We concluded that Collins' "characterization of his criminal conduct as 'unsafe driving while intoxicated,' paints the factual predicate with too broad a brush." *Id.* Accordingly, we refused to merge the two crimes.

To the extent that our merger jurisprudence is confusing, we now definitively state, for bench and bar, the standard for determining when convictions should merge for the purposes of sentencing. The preliminary consideration is whether the facts on which both offenses are charged constitute one solitary criminal act. If the offenses stem from two different criminal acts, merger analysis is not required. If, however, the event constitutes a single criminal act, a court must then determine whether or not the two convictions should merge. In order for two convictions to merge: (1) the crimes must be greater and lesser-included offenses; and (2) the crimes charged must be based on the same facts.[9] If the

---

**9.** One crime is a lesser-included offense of another crime if, while considering the underlying factual circumstances, the elements constituting the lesser crime as charged are all included within the elements of the greater crime, and the greater offense includes at least one additional element that is not a requisite for committing the lesser crime. Thus, in a situation where the crimes, as statutorily defined, each have an element not included in the other but the same narrow fact satisfies both of the different elements, the lesser crime merges into the greater-inclusive offense for sentencing.

*Compare Comer* (under the facts of that case, the elements of homicide by vehicle were subsumed within the elements of. involuntary manslaughter because the same narrow fact, recklessly driving the vehicle, supported both the reckless act requirement of involuntary manslaughter and the Vehicle Code violation requirement of homicide by vehicle) *with Collins* (the elements of homicide by vehicle were not subsumed within the elements of homicide by vehicle/DUI because homicide by vehicle required conviction of a **non-DUI** Vehicle Code violation, while homicide by vehicle/DUI required a DUI conviction, mutually exclusive elements; the characterization of the criminal act as "unsafe driving while intoxicated" was too broad). Additionally, where the elements of one crime "**as charged** are subsumed in the elements of [the other crime] and neither offense requires proof which the other does not[,]"

crimes are greater and lesser-included offenses and are based on the same facts, the court should merge the convictions for sentencing; if either prong is not met, however, merger is inappropriate.

■ Accordingly, we must first determine whether the facts on which both offenses are charged constitute one solitary criminal act. In *Weakland,* we held that where "the actor commits multiple criminal acts beyond that which is necessary to establish the bare elements of the additional crime, then the actor will be guilty of multiple crimes which do not merge for sentencing purposes." *Weakland,* 555 A.2d at 1233. While we overruled the first part of *Weakland* in *Anderson,* we reaffirmed this, the second part of *Weakland,* in *Belsar.* "When a criminal act has been committed, broken off, and then resumed, at least two crimes have occurred and sentences may be imposed for each. To hold that multiple assaults constitute only one crime is to invite criminals ... to brutalize their victims with impunity." *Belsar,* 676 A.2d at 634.

■ In the case *sub judice,* in mid-October 1996, Gatling summoned J.N. to the basement, told the child to lie face down on the couch, climbed on top of her, and while both were still clothed, began pushing with his penis against her buttocks. This was the exact series of events that occurred between Gatling and J.N. the prior month, for which the jury convicted Gatling of corruption of a minor. Thereafter, Gatling told J.N. to turn over, at which point he pulled down her pants, then his own, and proceeded to engage in sexual intercourse with her.[10] These facts are analogous to *Weak-*

*Collins,* 764 A.2d at 1059 (emphasis in original), the crimes are greater and lesser-included offenses.

" 'The same facts' means any act or acts which the accused has performed and any intent which the accused has manifested, regardless of whether these acts and intents are part of one criminal plan, scheme, transaction or encounter, or multiple criminal plans, schemes, transactions or encounters." *Anderson,* 650 A.2d at 22.

10. Gatling contends that the entire course of events in October was less than five (5) minutes in duration, but there is no evidence in the Record indicating the time-frame of the mid-October episode.

*land*, where the defendant struck Wilson with a gun, the two struggled, they stopped struggling, Weakland again struck Wilson with the weapon, and Weakland forced Wilson into the car. In each case, while there is no meaningful time lapse between the two criminal acts: (1) the acts constituting commission of the first crime (aggravated assault in *Weakland* and corruption of a minor in the present case) were completed before the defendants began committing the second crime (kidnapping in *Weakland* and sexual assault in the instant matter); and (2) proof of the second crime did not in any way rely on the facts necessary to prove the first crime. *See also Belsar.*

However, these factors in and of themselves are not enough to demonstrate separate criminal acts, because such a formulation would permit a court to convict and sentence a defendant to five consecutive terms for aggravated assault and attempted murder where the defendant shoots the victim five times. *See Belsar*, 676 A.2d at 638 (Cappy, J., dissenting). The element that distinguishes *Weakland* from that hypothetical is that the defendant in *Weakland* had a change in intent; at first he intended to incapacitate Wilson but at some point in time after striking Wilson in the head with the gun, Weakland developed a new intent to kidnap Wilson. In the hypothetical situation, the defendant presumably has the intent to kill the victim when he shoots him each time. If the defendant shoots the victim in the foot first, intending to incapacitate, and then shoots him in the chest four times, intending to kill, he has intended to commit two separate crimes and should be held accountable for both.

 Thus, the rule that we now announce is that an overarching chain of events does not constitute a single criminal act when there is a break in that chain. A break requires both that: (1) the acts constituting commission of the first crime were completed before the defendant began committing the second crime; and (2) proof of the second crime did not in any way rely on the facts necessary to prove the first crime. In addition, the break must be either: (1) a significant temporal lapse; or (2) where applicable, indicated by a change in the

criminal intent of the defendant at some point during the sequence. Where a defendant is convicted of two or more crimes and there is no break, the court must then proceed to the merger analysis as above described. If the acts that make-up the first crime are complete before the defendant begins the second crime, if proof of the second crime does not rely on any of the facts supplying proof of the first crime, and if there is either a significant temporal break or a change in the defendant's intent, the defendant will have committed multiple criminal acts.

In the present case, the evidence suggests that, at first, Gatling intended to engage in the same conduct he had a month prior. However, thereafter he developed the intent to engage in sexual relations with J.N. During the September incident, Gatling stopped his actions after rubbing against J.N. while both were clothed and there is no evidence that he intended to engage in sexual relations with J.N. at that time. Conversely, during or immediately after his clothed contact with J.N. in mid-October 1996, Gatling decided to undress J.N. and himself and have vaginal intercourse with the child. The crime of corruption of a minor was complete before Gatling turned J.N. over and removed her clothes. The acts constituting statutory sexual assault did not commence until after Gatling turned J.N. over and took off her clothes and proof of the statutory sexual assault does not in any way rely on the facts constituting the corruption of a minor charge. The evidence indicates a change in intent and a break in the chain of events, signifying two separate criminal acts-corruption of a minor and statutory sexual assault.

As we have determined that Gatling engaged in separate criminal acts giving rise to his convictions for corruption of a minor and statutory sexual assault, we need not conduct a merger analysis.

## CONCLUSION

For the foregoing reasons, we reverse the Order of the Superior Court and reinstate the Judgment of Sentence imposed by the Court of Common Pleas of Philadelphia County.

Mr. Chief Justice ZAPPALA concurs in the result.

Mr. Justice CAPPY files a dissenting opinion in which Mr. Justice NIGRO joins.

Mr. Justice SAYLOR files a concurring opinion.

Mr. Justice EAKIN did not participate in the consideration or decision of this matter.

Justice SAYLOR, concurring.

I join the lead opinion in reaffirming that it is a threshold question to statutory merger analysis whether or not the underlying criminal conduct involved is fairly described as unitary. I have difficulty subscribing to the lead's "break-in-the-chain" test, however, since this issue of distinctness is best assessed according to the totality of the circumstances, and the discrete factors described by the opinion announcing the judgment of the court are open to subjective interpretation and may be difficult to definitively resolve, particularly where, as here, the offenses upon which multiple punishments are to be predicated occurred in close proximity in time and location. *See generally Swafford v. State*, 112 N.M. 3, 810 P.2d 1223, 1233 (1991) (elaborating upon the difficulties encountered in attempts to fashion judicial definitions of the same factual event). I would have no objection to an effort to identify factors to consider as a more general guideline in the assessment, as many other jurisdictions have done. *See, e.g., Herron v. State*, 111 N.M. 357, 805 P.2d 624, 628–29 (1991).

In any event, I would emphasize that the essential inquiry where distinctness is legitimately in dispute is inherently factual, and I believe, therefore, that it should generally be resolved by the factfinder. *Cf. Commonwealth v. Andrews*, 564 Pa. 321, 330–31, 768 A.2d 309, 313–14 (2001); *Wyant v. State*, 519 A.2d 649, 661 (Del.Supr.1986) ("[w]hether a course of conduct involving multiple sexual assaults permits prosecution for more than one statutory offense . . . ultimately turns on the facts, particularly in the timing between the sexual acts

and the physical movement of the victim between the acts").[1] Accordingly, I deem the assessment on appellate review best couched in terms of evidentiary sufficiency. *Accord Andrews*, 564 Pa. at 330, 768 A.2d at 314; *Swafford*, 810 P.2d at 1234 (describing the fundamental question in determining whether "similar statutory provisions sharing certain elements may support separate convictions and punishments" as whether "examination of the facts presented at trial establish[es] that the jury reasonably could have inferred independent factual bases for the charged offenses"). I would also note a tendency in a number of jurisdictions to view a series of overt acts in a sexual assault context as discrete crimes. *Cf. State v. Rummer*, 189 W.Va. 369, 432 S.E.2d 39, 46–50 (1993) (summarizing cases involving multiple, proximate instances of offensive touching); *People v. Perez*, 23 Cal.3d 545, 153 Cal. Rptr. 40, 591 P.2d 63, 68 (1979) ("A defendant who attempts to achieve sexual gratification by committing a number of base criminal acts on his victim is substantially more culpable than a defendant who commits only one such act.").[2]

Here, while I consider it a close question whether the evidence is sufficient to support the conclusion that Appellee's conduct is severable, ultimately I agree that the evidence as described in the lead opinion, viewed in the light most favorable to the Commonwealth as the verdict winner, and in particular Appellee's repositioning of the minor victim followed by his escalated invasion of her body, was sufficient to support the imposition of separate punishments for multiple acts. *Accord Harrell v. State*, 88 Wis.2d 546, 277 N.W.2d 462, 466 (App.1979) ("If at the scene of the crime the defendant can be

1. In this context, a request for a bill of particulars may serve as an appropriate tool in ultimately narrowing the factfinder's focus. *See* Pa.R.Crim.P. 572.

2. As an aside, however, I find the "volume discount" rubric that has been employed by the Court to be somewhat problematic, since it falls short of an entire calculus, failing to account, in particular, for the ability of the sentencing authority to consider aggravating circumstances such as repetitive offensive acts in fashioning the appropriate punishment for a single offense. *See generally* 204 Pa.Code § 313.13; *Commonwealth v. Duffy*, 341 Pa.Super. 217, 223, 491 A.2d 230, 231, 233 (1985).

said to have realized that he has come to a fork in the road, and nevertheless decides to invade a different interest, then his successive intentions make him subject to cumulative punishment and he must be treated as accepting that risk whether he in fact knew it or not." (quoting *Irby v. United States*, 390 F.2d 432, 437–38 (D.C.Cir.1967))). Thus, while the record might be read to suggest that the trial court, sitting as the factfinder, may have actually returned its verdict on the corruption of minors charge based on the entire course of conduct involved, thus failing the lead's break-in-the-chain test, Appellee's failure to narrow the factfinder's focus presently inures to the benefit of the Commonwealth, rendering it unnecessary to proceed further with a sentencing merger assessment.

Concerning the elements of sentencing merger analysis articulated by the opinion announcing the judgment of the court, I agree that the Court's jurisprudence, in its present state, focuses upon legislative purpose in terms of whether or not the General Assembly intended for the crimes to be deemed greater and lesser included offenses, and that the evidence adduced at trial has been deemed to be either relevant to this inquiry or a separate factor in the assessment. I would merely observe that some additional development of the law would seem to be necessary to clarify the precise role that the evidence serves in Pennsylvania's sentencing merger jurisprudence. *See generally State v. Meadors*, 121 N.M. 38, 908 P.2d 731, 735–36 (1995) (describing, *inter alia*, one evidence-based approach and its hybrids in merger analysis); James A. Shellenberger and James A. Strazzella, *The Lesser Included Offense Doctrine and the Constitution: The Development of Due Process and Double Jeopardy Remedies*, 79 MARQ. L.REV. 1, 6–13 (Fall 1995) (same).

Justice CAPPY, dissenting.

This case involves the difficult question of when multiple convictions arising from the same criminal episode should merge for the purpose of sentencing. The lead opinion finds that a merger analysis is not necessary in this case as there

were two distinct criminal acts. Because I do not believe that there was a break in the action sufficient to support a finding that two different sets of facts underlie the convictions for corrupting the morals of a minor and statutory sexual assault, I am compelled to dissent.

As the lead opinion correctly notes, the central inquiry of a merger analysis is whether the crimes are greater and lesser included offenses. To answer this inquiry we look at the elements of each offense. If all the elements of the lesser offense are within the elements of the greater, and the greater offense includes at least one additional element, which is different, then the sentences merge. *Commonwealth v. Anderson,* 538 Pa. 574, 650 A.2d 20 (1994). This inquiry is not conducted in a vacuum; by necessity it requires consideration of the factual context culminating in the convictions at issue, since sentences will only merge where the convictions arise from the same factual predicate. *Commonwealth v. Belsar,* 544 Pa. 346, 676 A.2d 632 (1996).

A merger analysis begins with an examination of the crimes subject to sentence. The elements of the offenses at issue are set forth within the following relevant excerpts:

**Corruption of minors;** "Whoever, being of the age 18 years and upwards, by any act corrupts or tends to corrupt the morals of any minor less than 18 years of age...." 18 Pa.C.S.A. § 6301(a)(1).

**Statutory sexual assault;** "[A] person commits a felony of the second degree when that person engages in sexual intercourse with a complainant under the age of 16 years and that person is four or more years older than the complainant and the complainant and the person are not married to each other." 18 Pa.C.S.A. § 3122.1.

A conviction for corruption of minors is established when a defendant over the age of 18 years commits an act that corrupts or tends to corrupt a victim under the age of 18. Statutory sexual assault is established by proof of sexual intercourse between two unmarried persons where one party

is under the age of 16 and the other party is at least four years older.

In this case, to meet the necessary elements to support a conviction for corruption of minors and statutory sexual assault, the Commonwealth established, beyond a reasonable doubt, the following facts. In October of 1996, the defendant called the victim to his basement room and told her to lie face down on the sofa. The defendant climbed on top of the victim and began to grind his pelvis against her buttocks. The defendant proceeded to turn the victim face up, pull down, first her pants and then his own, and engage in sexual intercourse. The entire incident was conducted within a time span of four to five minutes. The defendant was 27 years of age when he had sexual intercourse with the victim, who was eleven years of age.

The lead opinion does not look at the elements of the two offenses as it finds no merger analysis should take place given the factual circumstances at bar. The lead opinion dissects the facts set forth into two distinct pieces as follows: the initial grinding constitutes one criminal act followed by a break in the action; whereupon the defendant formed a different intent demonstrated by turning the victim to face him, and then committed a second criminal act, by engaging in sexual intercourse. I cannot accept the lead opinion's highly speculative analysis of the defendant's intent in order to conclude that a break in the action occurred. As I pointed out in my dissent in *Belsar*, a break indicates that action ceased and then was resumed. *Id.* at 638 (Cappy, J. dissenting).[1] To conclude that such a break occurred on the facts of this case stretches that concept to a meaningless conclusion.

Rather, I would find that the merger doctrine does and should apply to the convictions in this case. Based on the facts of this case, all of the elements of corruption of a minor,

[1]. Insofar as I discussed the concept of the intent of the accused within a merger analysis, I was using that as a reference point to further explicate the concept of a definitive break in the action. I in no fashion meant that merger could be avoided merely be positing that the defendant's intent changed in the midst of an unbroken, continuous criminal act.

the age of the parties and the proof of an act (sexual intercourse) that corrupted, are contained within the greater offense of statutory sexual assault, as that crime requires proof of a four-year age disparity, sexual intercourse, and that the parties are not married to one another. All the elements of the lesser offense are included within the greater offense and the greater offense requires proof of one element that is different. Thus, the two convictions merge for purposes of sentencing.

Accordingly, as I would affirm the decision of the Superior Court, I must dissent.

Mr. Justice NIGRO joins this dissenting opinion.