J-S32001-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| GEORGE DAVID RAINEY | : | |
| | : | |
| Appellant | : | No. 644 MDA 2022 |

Appeal from the PCRA Order Entered March 23, 2022
In the Court of Common Pleas of York County
Criminal Division at No(s):  CP-67-CR-0002018-2008

BEFORE:  PANELLA, P.J., BENDER, P.J.E., and LAZARUS, J.

MEMORANDUM BY PANELLA, P.J.:               **FILED:  JANUARY 27, 2023**

To describe the history of this case before the Court of Common Pleas and this Court as anything but protracted would be an understatement. Now, roughly fifteen years after the commission of the crimes leading to his convictions, we are presented with an appeal filed by George David Rainey following the dismissal of his timely first petition filed under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546. We affirm.

On January 9, 2008, Rainey was driving a vehicle with two passengers, his brother Eugene Rainey and Joseph Mallory. At some point, the men came across a vehicle being driven by Letika Engram, which had Dion Williams as a passenger. Rainey cut in front of Engram's vehicle and blocked it in an alley. Eugene exited Rainey's vehicle and fired multiple shots into the passenger side of Engram's vehicle. Two of the bullets struck Williams. Eugene returned

to Rainey's vehicle and Rainey sped away. Williams died as a result of the gunshot injuries. Rainey and Eugene fled and were apprehended in Maryland.

Rainey's first trial took place in February of 2009 and concluded in a mistrial. In March of 2009, Rainey was tried a second time and convicted of third-degree murder and criminal conspiracy to commit aggravated assault. He was sentenced to an aggregate term of incarceration of twenty-five to fifty years. On direct appeal, this Court concluded that trial counsel should have been permitted to withdraw due to an actual conflict of interest, reversed the judgment of sentence, and awarded a new trial. *Commonwealth v. Rainey*, 826 MDA 2009, 4 A.3d 209 (Pa. Super. filed May 28, 2010) (unpublished memorandum).

Rainey's third trial occurred in December 2010. The jury convicted Rained of conspiracy to commit aggravated assault, but it deadlocked on the third-degree murder charge. A few days later, a fourth trial commenced, and Rainey was convicted of third-degree murder. On February 14, 2011, the trial court sentenced Rainey to serve a term of incarceration of twenty to forty years for the murder conviction and a consecutive term of one and one-half to three years for the conspiracy conviction.

On direct appeal, this Court affirmed Rainey's convictions, but vacated the judgment of sentence for an evidentiary hearing to determine if a new trial was required based upon after-discovered evidence, and, if not, for the re-imposition of sentence. *Commonwealth v. Rainey*, 491 MDA 2011, 81

A.3d 986 (Pa. Super. filed May 1, 2013). Rainey filed a petition for allowance to appeal, which our Supreme Court denied. On remand, the trial court held a hearing on the issue of after-discovered evidence. On November 9, 2016, the trial court filed an order that denied a new trial and reimposed the judgment of sentence.

Rainey filed a timely, *pro se*, PCRA petition on July 11, 2017. Thereafter, appointed counsel filed multiple amended PCRA petitions. The PCRA court held an evidentiary hearing and denied relief. This timely appeal followed.

Our standard of review for an order denying PCRA relief is whether the record supports the PCRA court's determination, and whether the PCRA court's determination is free of legal error. ***See Commonwealth v. Phillips***, 31 A.3d 317, 319 (Pa. Super. 2011). The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record. ***See id***.

Rainey's first three issues present claims of ineffective assistance of counsel. Concerning ineffective assistance of counsel arguments, we presume counsel is effective, and the appellant bears the burden to prove otherwise. ***See Commonwealth v. Bennett***, 57 A.3d 1185, 1195 (Pa. 2012). The appellant must demonstrate: (1) his underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate his interests; and (3) but for counsel's ineffectiveness, there is a reasonable probability that the outcome of the

proceedings would have been different. *See Commonwealth v. Solano*, 129 A.3d 1156, 1162-1163 (Pa. 2015).

We observe that claims of ineffective assistance of counsel are not self-proving. *See Commonwealth v. Wharton*, 811 A.2d 978, 986 (Pa. 2002). "[A] post-conviction petitioner must, at a minimum, present argumentation relative to each layer of ineffective assistance, on all three prongs of the ineffectiveness standard…." *See Commonwealth v. D'Amato*, 856 A.2d 806, 812 (Pa. 2004) (citation omitted). "[A]n undeveloped argument, which fails to meaningfully discuss and apply the standard governing the review of ineffectiveness claims, simply does not satisfy Appellant's burden of establishing that he is entitled to relief." *See Commonwealth v. Bracey*, 795 A.2d 935, 940 n.4 (Pa. 2001) (citation omitted). "A failure to satisfy any prong of the ineffectiveness test requires rejection of the claim of ineffectiveness." *Commonwealth v. Daniels*, 963 A.2d 409, 419 (Pa. 2009) (citation omitted).

Where an appellant is not entitled to relief on the underlying claim upon which his ineffectiveness claim is premised, he is not entitled to relief with regard to his ineffectiveness claim. *See Commonwealth v. Ousley*, 21 A.3d 1238, 1246 (Pa. Super. 2011). In short, counsel cannot be deemed ineffective for failing to pursue a meritless claim. *See Commonwealth v. Loner*, 836 A.2d 125, 132 (Pa. Super. 2003) (*en banc*).

Regarding the second prong, we have reiterated that trial counsel's approach must be "so unreasonable that no competent lawyer would have chosen it." **Commonwealth v. Ervin**, 766 A.2d 859, 862-863 (Pa. Super. 2000) (citation omitted). Our Supreme Court explained our review of reasonableness as follows: "Our inquiry ceases and counsel's assistance is deemed constitutionally effective once we are able to conclude that the particular course chosen by counsel had *some reasonable* basis designed to effectuate his client's interests. The test is not whether other alternatives were more reasonable, employing a hindsight evaluation of the record." **Commonwealth v. Pierce**, 527 A.2d 973, 975 (Pa. 1987) (citation omitted) (emphasis original).

Concerning the third prong, we are mindful that prejudice requires proof that there is a reasonable probability that but-for counsel's error, the outcome of the proceeding would have been different. **See Commonwealth v. Pierce**, 786 A.2d 203, 213 (Pa. 2001). When an appellant has failed to meet the prejudice prong of an ineffective assistance of counsel claim, the claim may be disposed of on that basis alone, without a determination of whether the first two prongs have been met. **See Commonwealth v. Baker**, 880 A.2d 654, 656 (Pa. Super. 2005).

First, Rainey argues that his direct appeal counsel was ineffective for failing to properly challenge the trial court's jury instruction on conspiracy. **See** Appellant's Brief at 18-29. He contends that appellate counsel erred in

limiting the issue to an allegation that conspiracy to commit third-degree murder was a non-existent offense. Rainey now asserts appellate counsel should have argued that the trial court erred in charging the jury on conspiracy because the Commonwealth withdrew a charge of conspiracy to commit third-degree murder and a prior jury (at his third trial) did not find Rainey guilty of third-degree murder/vicarious liability. Basically, Rainey claims that the proper argument on appeal should have been that the trial court's instruction for conspiracy was improper because he was not charged with conspiracy to commit third-degree murder.

Our review of the record reveals that the issue of jury instructions related to whether "the trial court erred in instructing the jury that [Rainey] could be guilty of third-degree murder based upon conspiratorial liability" has been previously litigated in Rainey's most recent direct appeal to this Court. **See Rainey**, 491 MDA 2011, 81 A.3d 986, at 14. In reviewing the propriety of the jury instructions, this Court addressed the merits of the jury charge related to conspiratorial liability and third-degree murder. In our memorandum decision filed on May 1, 2013, this Court stated:

> [a] conviction of third-degree murder can be supported based upon a theory of conspiratorial liability. Such a conviction will be sustained where the defendant entered an agreement with another individual to commit an intentional or malicious act, the act that the co-actors agreed to commit evidenced conscious disregard of an unjustified and extremely high risk that death might result from its commission, and the victim died as [a] result of the agreed-upon intentional act. The Commonwealth's evidence herein supported that [Rainey] conspired with his brother to assault Mr. Williams with a gun, which was an act that evidenced

- 6 -

malice. Thus, under prevailing authority, the trial court did not err in giving an instruction that [Rainey] could be found guilty of conspiracy to commit third-degree murder.

*Rainey*, 491 MDA 2011, 81 A.3d 986, at 20. Because the underlying issue of proper jury instructions related to conspiratorial liability was previously litigated on direct appeal, it is not cognizable under the PCRA. *See Commonwealth v. Hutchins*, 760 A.2d 50, 55 (Pa. Super. 2000) (stating that a PCRA petitioner cannot obtain PCRA review of previously litigated claims by presenting those claims again in a PCRA petition and setting forth new theories in support thereof).

Moreover, even if this issue had not been previously litigated, we would conclude that it lacks merit. When an appellant has failed to meet the prejudice prong of an ineffective assistance of counsel claim, the claim may be disposed of on that basis alone, without a determination of whether the first two prongs have been met. *Baker*, 880 at 656. As stated above, prejudice requires proof that there is a reasonable probability that, but for counsel's error, the outcome of the proceeding would have been different. *Pierce*, at 203, 786 A.2d at 213.

Instantly, Rainey's argument in this regard amounts to mere allegations of appellate counsel ineffective assistance and lacks any discussion of the prejudice prong of the ineffective assistance test. Indeed, Rainey has failed to allege, let alone prove, that appellate counsel's omission of an argument to this Court on direct appeal regarding the instructions to the jury caused actual

prejudice. As we previously stated, claims of ineffective assistance of counsel are not self-proving. *Wharton*, 811 A.2d at 986. A PCRA petitioner must present argumentation relative to all three prongs of the ineffectiveness standard. *D'Amato*, 856 A.2d at 812. Accordingly, Rainey's claim of direct appeal counsel ineffective assistance fails.

Rainey next argues that his appellate counsel was ineffective for failing to properly develop a double jeopardy claim in his most recent direct appeal. *See* Appellant's Brief at 29-35. Specifically, Rainey claims that his conviction of conspiracy to commit aggravated assault in his third trial resulted in the functional equivalent of an acquittal of the charge of conspiratorial liability to commit third-degree murder, which was the crime upon which the jury could not reach a verdict at the third trial. His argument is based upon a theory that he was convicted of a lesser included offense, which acts as an implied acquittal of the greater offense. Rainey asserts that appellate counsel was ineffective in the presentation of this issue, which was deemed waived by this Court. *See Rainey*, 491 MDA 2011, 81 A.3d 986, at 7 n.2.

Rainey's issue invokes the protections afforded by the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution as well as

Article I, Section 10 of the Pennsylvania Constitution.[1] As such, our scope and

standard of review are as follows:

> An appeal grounded in double jeopardy raises a question of
> constitutional law. This court's scope of review in making a
> determination on a question of law is, as always, plenary. As with
> all questions of law, the appellate standard of review is *de novo*.

*Commonwealth v. Vargas*, 947 A.2d 777, 780 (Pa. Super. 2008) (citations

omitted).

"The double jeopardy protections afforded by our state constitution are

coextensive with those federal in origin; essentially, both prohibit successive

prosecutions and multiple punishments for the same offense."

*Commonwealth v. States*, 938 A.2d 1016, 1019 (Pa. 2007) (citation

omitted).

The United States Supreme Court has long explained that this policy of

finality in criminal proceedings is based upon the concept that

> [t]he State with all its resources and power should not be allowed
> to make repeated attempts to convict an individual for an alleged
> offense thereby subjecting him to embarrassment, expense and
> ordeal and compelling him to live in a continuing state of anxiety
> and insecurity, as well as enhancing the possibility that even
> though innocent he may be found guilty.

*Green v. United States*, 355 U.S. 184, 187 (1957).

---

[1] The Double Jeopardy Clause of the Fifth Amendment provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." Similarly, Article I, Section 10 states in relevant part, "No person shall, for the same offense, be twice put in jeopardy of life or limb[.]"

Our Rules of Criminal Procedure provide for retrial of offenses that resulted in a hung jury if such offenses are not greater or lesser "included offenses" in the charges for which the jury rendered a verdict:

> (D) … If the jury cannot agree with respect to all the counts in the information or indictment if those counts to which it has agreed operate as an acquittal of lesser or greater included offenses to which they cannot agree, these latter counts shall be dismissed. When the counts in the information or indictment upon which the jury cannot agree are not included offenses of the counts in the information or indictment upon which it has agreed, the defendant or defendants may be retried on those counts in the information or indictment.

Pa.R.Crim.P. 648(D). Rule 648 is "the procedural device" for implementing double jeopardy protections in Pennsylvania. *Commonwealth v. Buffington*, 828 A.2d 1024, 1029 (Pa. 2003).

The concept of an "included offense" is derived from the merger doctrine. "The merger doctrine developed to prevent punishing a defendant more than once for one criminal act." *Commonwealth v. Gatling*, 807 A.2d 890, 894 (Pa. 2002). For merger to apply, two conditions must be met. First, the crimes charged must be greater and lesser-included offenses. *See id*., at 899. This means that all the elements of the lesser offense are included in the elements of the greater offense, which also contains an additional element not found in the lesser offense. *See id*., at n.9. Second, the charged offenses must arise from the same set of facts. *See id*.

Here, at the conclusion of Rainey's third trial, the jury convicted him of conspiracy to commit aggravated assault, but it was deadlocked on the charge

of third-degree murder. However, we conclude the aggravated assault charge was not lesser included offense of the charge for third-degree murder. We conclude that both crimes require proof of at least one element which the other does not. "To establish the offense of third-degree murder, the Commonwealth need only prove beyond a reasonable doubt that the defendant killed an individual, with legal malice[,]" but does not require any proof that the defendant entered into an agreement with another person. **Commonwealth v. Devine**, 26 A.3d 1139, 1146 (Pa. Super. 2011) (citation omitted). In contrast, the offense of conspiracy to commit aggravated assault does not require proof that the defendant killed another person, but unlike third-degree murder, it does require that the defendant entered into an agreement with another person. **See Commonwealth v. Thomas**, 65 A.3d 939, 943 (Pa. Super. 2013).

Accordingly, Rainey's retrial on the charge of third-degree murder did not run afoul of Rule 468(D) nor the double jeopardy protections set forth in the United States and Pennsylvania Constitutions. Therefore, we find no merit to Rainey's underlying claim of ineffective assistance of appellate counsel for failure to develop a meritless issue on direct appeal. Consequently, Rainey is due no relief on this issue.

In his third issue, Rainey argues that his trial counsel was ineffective for failing to adequately impeach the testimony offered by Joseph Mallory, the other passenger in Rainey's vehicle at the time of the incident.

*See* Appellant's Brief at 35-40. Rainey claims trial counsel should have cross-examined Mallory about the basis for the Commonwealth's allegation of motive and should have done so with the aid of a police report. Rainey notes the discrepancy between Mallory's testimony and the police report concerning the location of the residence involved and the manner of the break-in. "Specifically, Mallory testified that Rainey allegedly told Mallory that Williams had entered an apartment on Parkway by climbing through a window and stealing Rainey's son's jewelry. But the police report provided by the Commonwealth referred to a burglary at Wilson Court, York City-- not Parkway and did not involve a person going through a window." Appellant Brief at 37 (citations omitted). In other words, Rainey claims that the police report was wholly inconsistent with Mallory's testimony that Rainey believed Williams had burglarized Rainey's home. Rainey therefore believes trial counsel should have discredited Mallory's testimony by confronting Williams with the police report.

While we conclude Rainey's claim may have arguable merit, we nevertheless conclude that he has failed to establish that he suffered prejudice from the absence of this confrontation.

Mallory testified that in the years leading up to the shooting, Rainey had expressed a belief that Williams had stolen jewelry from Rainey's children. *See* N.T., 12/13-16/2010, at 184. "He had mentioned someone seeing [Williams] climb through the kitchen window in the projects building out there, out at Parkway, and basically coming out with a bunch of jewelry and things

of that nature." ***See id.***, at 186. Mallory testified that Rainey had indicated a desire for revenge against Williams based on the burglary. ***See id.***, at 185.

As noted previously, Mallory's testimony does not match the facts of the burglary as recited in the police report signed by Rainey. First, the burglarized home was not on Parkway. Second, the burglar did not enter through a window, but by breaking down a door.

While counsel did not confront Mallory over these discrepancies, he was able to highlight them to the jury through Rainey's own testimony later in the trial:

> Q.     There was previous testimony in this case about a burglary. Do you know what that's about?
>
> A.     No. It depends what you're talking about. From what I heard, is that what you're asking me?
>
> Q.     Well, was there a burglary, any of your children or their parents?
>
> A.     It was a burglary at my baby mother's house, yes.
>
> Q.     Did you blame Dion Williams for that burglary?
>
> A.     No.
>
> Q.     Do you know who committed that burglary?
>
> A.     No. Actually, I called the police and made a report of it and in the report I mean I told them didn't know who did it. I wasn't there. She wasn't there. And I believe they took fingerprints and I left it in the police's hands.

***Id.***, at 493. Rainey further addressed the circumstances of the burglary when the prosecutor cross-examined him:

- 13 -

Q.     Now, you say you know – did you report a burglary?

A.     Yes.

Q.     Would I be correct that that was on October 26th of 2006, that you reported that burglary?

A.     I couldn't tell you the exact date and stuff, but it seems about correct.

Q.     And you actually signed that document, that report?

A.     Yes.

Q.     And it spoke about – who was your girlfriend at this time?

A.     Nina Otto.

Q.     Did you mention her in the report?

A.     She's actually the one that called the police. She got to the house before me and called me. I came to the house and I noticed the back door was kicked in.

*Id.*, at 497. Finally, the prosecutor gave Rainey the opportunity to directly address whether he ever believed Williams was responsible for the burglary:

Q.     You indicate that at that time you didn't have any idea who may have done this?

A.     I told the cops I don't know who did it. I wasn't there.

Q.     We have heard testimony throughout this trial of something called street talk. Did you make any inquiry on the street who may have done this?

A.     No. The testimony I heard here today from – well yesterday from Joseph –

Q.     I'm not asking about that testimony. I'm asking you –

A.     No.

Q.     -- whether or not you made any inquiry of your friends or associates as to who may have committed this burglary and stolen your children's jewelry?

A.     No. I wasn't even concerned about it. We had homeowners insurance and we received a check for it, so it meant nothing.

*Id.*, at 498.

Therefore, the inconsistencies highlighted by Rainey were presented to the jury, and the jury was further presented with Rainey's testimony that directly contradicted Mallory's testimony on motive. Under these circumstances, we cannot conclude that if counsel had cross-examined Mallory on the police report there is a substantial likelihood of a different verdict. To the contrary, we see no meaningful probability that such a cross-examination would have led to a not guilty verdict. Rainey's third issue on appeal merits no relief.

Rainey last argues that he is serving an illegal sentence. ***See*** Appellant's Brief at 40-43. He contends that his consecutive sentences for conspiracy to commit aggravated assault and for third-degree murder are illegal under 18 Pa.C.S.A. § 906. We disagree.[2]

A challenge to the legality of sentence is an attack upon the power of a court to impose a given sentence. ***See Commonwealth v. Lipinski***, 841 A.2d

---

[2] We note that Rainey did not present this argument to the PCRA court. However, where an issue challenging a sentence "clearly implicates the legality of [the] sentence, whether it was properly preserved below is of no moment, as a challenge to the legality of sentence cannot be waived." ***Commonwealth v. Dickson***, 918 A.2d 95, 99 (Pa. 2007) (citation omitted).

537, 539 (Pa. Super. 2004). The question of whether a claim implicates the legality of a sentence presents a pure question of law. *See Commonwealth v. Foster*, 17 A.3d 332, 340 n.13 (Pa. 2011). Issues relating to the legality of a sentence are reviewed *de novo,* and our scope of review is plenary. *See Commonwealth v. Infante*, 63 A.3d 358, 363 (Pa. Super. 2013).

Section 906 provides that "[a] person may not be convicted of more than one of the inchoate crimes of criminal attempt, criminal solicitation or criminal conspiracy for conduct designed to commit or to culminate in the commission of the same crime." 18 Pa.C.S.A. § 906. "Pennsylvania courts have applied this provision in situations where a defendant commits two or three inchoate offenses while preparing to commit a single underlying crime." *Commonwealth v. Kingston*, 143 A.3d 917, 923 (Pa. 2016).

Our Supreme Court has long explained that "Section 906 provides only that a defendant cannot be sentenced on multiple inchoate crimes related to the same completed crime; it does not mean that the underlying inchoate crime merges into the completed crime." *Commonwealth v. Savage*, 602 A.2d 309, 310 n.4 (Pa. 1992). In *Savage*, the appellant was sentenced to life imprisonment on a first-degree murder conviction and a concurrent period of one to two years of imprisonment on a weapons conviction. *See id*. However, the trial court did not impose a sentence on the appellant's conspiracy conviction. Our Supreme Court noted that the trial judge misinterpreted

Section 906 to mean that the appellant's conviction of conspiracy merged into his murder conviction, which was an incorrect reading of the statute. *See id*.

To this end, we observe that the case relied on by Rainey, ***Commonwealth v. King***, 234 A.3d 549 (Pa. 2020), is readily distinguishable from the instant matter. In ***King***, the Court determined the appellant could not be sentenced to serve separate terms of imprisonment for the inchoate crimes of conspiracy and attempt. The Court applied Section 906 and vacated the sentence on the conspiracy count because the appellant entered into one agreement with his co-conspirator to murder the victim and he failed in his attempt to commit the murder. ***See King***, 234 A.3d at 568. Unlike the present case, the Court in ***King*** was presented with a scenario in which the trial court imposed sentences for two inchoate crimes.

Here, the trial court imposed a sentence for an inchoate crime, *i.e.*, conspiracy to commit aggravated assault, and for a completed crime, *i.e.*, third-degree murder. While Rainey invites us to treat the third-degree murder verdict as inchoate because the jury was instructed on co-conspirator liability, we cannot accept this invitation. Section 906 applies only to inchoate crimes, and third-degree murder, no matter what the foundation for the liability, is not an inchoate crime. Consequently, we conclude that the sentences imposed in this matter do not contradict the holding in **King** and do not violate Section 906. Therefore, Rainey is not afforded relief on this issue.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 01/27/2023