555 A.2d 1228

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**James WEAKLAND, Appellee.**

Supreme Court of Pennsylvania.

Argued Oct. 28, 1988.

Decided March 7, 1989.*

* This decision was considered and rendered prior to March 7, 1989.

Stuart Suss, Director of Appeals, for appellant.

Joseph S. Nescio, West Chester, for appellee.

John W. Packel, Jules Epstein, Elaine Demasse, Benjamin Lerner, Philadelphia, for amicus-defender Association of Philadelphia.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and STOUT, JJ.

## OPINION OF THE COURT

FLAHERTY, Justice.

James Weakland, appellee herein, pled guilty or nolo contendere to various crimes arising from the murder of Cecil Rash and the robbery of the gas station owned by Cecil and Florence Rash in Chester County. Specifically Weakland pled guilty to two counts of robbery and one count of criminal conspiracy, and nolo contendere to one count of kidnapping, four counts of aggravated assault, one count of theft, and a general charge of homicide. Following a degree of guilt hearing, conducted on April 11 and 12, 1977, a three judge panel ruled that he was guilty of first degree murder. On November 29, 1977, following denial of post-trial motions, Weakland was sentenced to life imprisonment on the murder conviction. On April 24, 1978, he was sentenced to fifty-three and one-half to one hundred seven years on the remaining charges, consecutive to the life sentence. Superior Court affirmed the judgments of sentence on appeal, and this Court denied a petition for allowance of appeal. Weakland then filed a P.C.H.A. petition,

which the trial court denied, but on appeal, Superior Court vacated two of the judgments of sentence, ruling that one assault against Mrs. Rash merged with another, and that another assault against a witness, one Mr. Wilson, merged into the crime of kidnapping, 365 Pa.Super. 648, 526 A.2d 817. (table) Both the Commonwealth and Weakland petitioned for allowance of appeal. We denied Weakland's petition, but granted the Commonwealth's petition in order to address the question of whether Superior Court treated the merger questions properly.

The Commonwealth's first claim is that Superior Court was in error in determining that its review of the validity of Weakland's sentences must be circumscribed by an examination of evidence presented at the guilty plea colloquy, but not at the degree of guilt hearing. Superior Court's reasoning was:

> We do not feel it is appropriate to consider these facts [those presented at the degree of guilt hearing] as they were not presented as part of the factual basis for the plea.

Slip Op. at 4, n. 2. The question, thus, is whether facts presented at a degree of guilt hearing, but not at a guilty plea colloquy, may serve as the basis for a conviction.

At the time of this trial, Pa.R.C.P. 352 (rescinded April 2, 1978) provided:

> (b) When a defendant charged with murder enters a plea of guilty and the attorney for the Commonwealth does not certify that the case does not rise higher than murder of the second degree, the judge before whom the plea is entered shall hold a hearing to determine whether the case may constitute murder of the first degree. If, after the Commonwealth's presentation of its evidence, the judge is of the opinion that the case does not rise higher than murder of the second degree, the judge shall proceed to hear all the evidence, determine the crime and impose sentence.
>
> (c) If, after presentation of the Commonwealth's evidence, the judge is of the opinion that the case may

constitute murder of the first degree, the judge shall secure the assignment of two other judges of like jurisdiction and power to sit with him as a panel to hear the evidence and decide all issues of law and fact. A decision that the offense is murder of the first degree shall be by unanimous vote. If the panel does not find murder of the first degree, the panel shall determine the degree of the crime by majority vote. If the panel determines that the crime is less than murder of the first degree, the judge before whom the plea was entered shall alone determine and impose sentence.

Pursuant to this rule, a degree of guilt hearing was conducted at which evidence of other crimes in addition to murder was admitted. Weakland would have us decide that this other-crimes evidence should not be considered at sentencing.

■ We are concerned here with a sentencing question, not with the determination of guilt, and in a guilty plea case prior to sentencing, a court always hears, usually at a sentencing hearing, additional evidence which will aid the court in imposing a sentence. If that evidence is properly admitted, if the defendant has the right to participate with counsel in a contested proceeding during which disputed issues of fact are resolved, it matters not whether the evidence is admitted at a hearing during which the plea is accepted, at another hearing at which degree of guilt is determined, or just prior to sentencing at the sentencing hearing. So long as the evidence is properly admitted by the court prior to sentencing, and so long as the defendant has the right to challenge it, it may be considered for sentencing purposes.

■ Furthermore, defendants who plead guilty are always advised of the nature of the charges and of the sentences which may be imposed. In this case, Weakland was advised that "the Court may if it chooses impose the maximum sentences upon each of the offenses to which you plead guilty or nolo contendere, and may further have those sentences run consecutively, that is, one after another."

Knowing this, Weakland chose to plead guilty, and in fact now claims not that the evidence on which his sentencing was based is false or inadmissible, but that it was admitted at one hearing rather than another. We agree with the Commonwealth that Superior Court was in error in failing to consider, for sentencing purposes, evidence that was introduced at the degree of guilt hearing as well as at the guilty plea hearing.

We next must consider whether the evidence introduced at the degree of guilt hearing requires a merger of two of the four assault charges, one into another assault charge and the other into a kidnapping charge.

The facts in this case are that James Weakland, the appellee, and his brother Robert conspired to rob a service station owned by Cecil and Florence Rash. James Weakland entered the repair bay of the station, where Cecil Rash was working on a car, struck him with a wrench, knocking him to the ground, and removed $51.00 from his wallet. He then entered the office of the station, where his brother Robert was holding Mrs. Rash. One of the brothers then tore the telephone from the wall, and Robert assaulted Mrs. Rash. Both brothers took money and other items from the service station, and placed them in their car. The two robbers were approaching their car when Mrs. Rash, who had been thrown to the ground outside the station, got up and shouted to an approaching customer that the station was being robbed and that the customer should leave and call the police. James, who was apparently not far from Mrs. Rash when she warned the customer, started to pick up a cinder block which was used to anchor an air hose. At that point, Mr. Rash, covered with blood, and without his glasses, emerged from the garage, armed with a .22 caliber nine-shot revolver. He ordered James not to hurt his wife, and then fired at him, wounding him in the leg. James fell to the ground and crawled a short distance away. Robert began throwing bottles at the Rashes from behind the Weaklands' car, and Mr. Rash fired at least once at Robert, but to no avail. James also began throwing items at the

Rashes, and after he hit Mr. Rash with a trashcan, he rushed him and the two men wrestled for the gun. While the two men wrestled, Mrs. Rash repeatedly struck James on the head with a large tire gauge until it broke, and then turned to wave for help from passing motorists. James finally got the gun from Mr. Rash and fired at Mrs. Rash, striking her in the fingers and arm. He then fired twice at Mr. Rash, striking him in the heart and killing him.

By the time James Weakland shot Mr. Rash, a witness, Edwin Wilson, had pulled his car into the service station, and was standing in front of his car, three or four paces from James, when the shooting occurred. James then rushed the Mr. Wilson, striking him in the head with the gun. The two struggled, and then stopped when James told the witness that he did not want to have to kill him. Mr. Wilson said that he did not want to be killed, but then James struck him again in the face with the gun and forced him into Mr. Wilson's car. Mr. Wilson was then required to push the Weaklands' car with his car to start it and to drive his own car from the station with James as a passenger. Shortly thereafter, Mr. Wilson was forced from the car and James used it to perfect his escape.

The first of the merger questions at issue in this case concern the assault upon Mrs. Rash when James ripped the telephone off the wall and his assault upon her when he shot her. James Weakland was charged with violations of 18 Pa.C.S. § 2702(a)(1), causing or attempting to cause serious bodily injury to another, and § 2702(a)(4), causing or attempting to cause bodily injury with a deadly weapon. Because Superior Court declined to consider evidence presented at the degree of guilt hearing, and the only evidence of assault presented at the guilty plea hearing concerned Weakland's shooting of Mrs. Rash, that court concluded that the two assault charges must merge. As we have discussed earlier, however, Superior Court's decision not to consider evidence presented at the degree of guilt hearing was error. At that hearing Mrs. Rash testified that during the time Robert Weakland was demanding her mon-

ey and James Weakland was attacking her husband in another part of the station, she responded:

"Let me call my granddaughter" which had just gone to the house, and he grabbed the phone out of the wall. He hit me on the side of the face and knocked me down in the chair and picked me up with his arm around my throat and he said, "You bitch, you do that again and I will kill you."

N.T. April 11, 1977, 15–16. This evidence is sufficient to support the § 2702(a)(1) aggravated assault conviction.[1] Superior Court was in error, therefore, in merging the two aggravated assault convictions.

Finally, the Commonwealth contends that as to the victim Edwin Wilson, Superior Court was in error in holding that although the two counts of aggravated assault do not merge, one of these counts of aggravated assault merges with the charge of kidnapping Mr. Wilson. Superior Court stated:

[The] evidence shows that appellant committed two distinct assaults on this victim: first he hit him several times with the gun, which supports the violation of 18 Pa.C.S. § 2702(a)(1) (causing or attempting to cause serious bodily injury) and second, he shoved the barrel of the gun into Mr. Wilson's face forcing him into the car, which supports the violation of 18 Pa.C.S. § 2702(a)(4) (causing or attempting to cause bodily injury with a firearm). Since

---

1. Even though Robert Weakland committed the assault on Mrs. Rash, James is liable as an accomplice. 18 Pa.C.S. § 306 provides:

   (a) **General rule.**—A person is guilty of an offense if it is committed by his own conduct or by the conduct of another person for which he is legally accountable, or both.

   (b) **Conduct of another.**—A person is legally accountable for the conduct of another person when:

   (3) he is an accomplice of such other person in the commission of the offense.

   (c) **Accomplice defined.**—A person is an accomplice of another person in the commission of an offense if:

   (1) with the intent of promoting or facilitating the commission of the offense, he:

   (ii) aids ... such other person in planning or committing it....

these were two distinct acts, there is no merger.... We do agree with appellant that the second aggravated assault, shoving the gun into the victim's face, merges with the kidnapping conviction for sentencing purposes. This act was the same act the Commonwealth relied on to prove the force necessarily [sic] to establish the elements of the charge of kidnapping. Since the assault and the kidnapping were, in effect, one crime, they merge for sentencing purposes.

Slip op. at 8.

The Commonwealth's position is that the necessary force required for a kidnapping conviction[2] is present in this case in addition to the force represented by the aggravated assaults just mentioned. Mr. Wilson, the witness, testified that after he saw James Weakland shoot Mr. Rash, James Weakland

came towards me and back-handed me with the pistol cutting a place across my forehead across the hairline. We grappled a little bit then and I was again going backwards. We got to a point about to the left front of my car, which was, as I had mentioned, heading towards Newark on 896. At this time he said, "I don't want to kill you over this," and I said, "I don't want you to either." So we relaxed a little bit.

I kept my hands up and he drove the pistol straight forward so that the barrel hit about an inch below my eye, below my left eye. I went back to approximately

---

2. The offense of kidnapping is defined as follows in Crimes Code:

(a) **Offense defined.**—A person is guilty of kidnapping if he unlawfully removes another a substantial distance under the circumstances from the place where he is found, or if he unlawfully confines another for a substantial period in a place of isolation, with any of the following intentions:

. . . . .

(2) to facilitate commission of any felony or flight thereafter.

. . . . .

(b) **Grading.**—Kidnapping is a felony of the first degree. A removal or confinement is unlawful within the meaning of this section if it is *accomplished by force, threat* or deception....

18 Pa.C.S. § 2901. (Emphasis added).

where my front door would open on the car and he said, "Get in and drive." I did and he got in the other side. N.T. April 11, 1977, 33.

The Commonwealth's theory is that Mr. Wilson got into the car because Weakland held the gun on him, and the act of holding Wilson at gunpoint is separate from the second assault when Weakland drove the barrel of the revolver into Mr. Wilson's face. The continued threat posed by the weapon, therefore, supplies the necessary element of threat of force required by the kidnapping statute.

We observe at the outset that the evidence may be fairly read to establish that James Weakland held the gun on Mr. Wilson before and during the kidnapping. The question becomes, then, whether a sentencing court should merge the crime of aggravated assault into the kidnapping for purposes of sentencing, or whether the court should have affirmed the separate imposition of sentences for these crimes and relied instead on the additional evidence of threat to supply the required force element of the kidnapping statute, implied by James Weakland's continued possession of the gun.

Although we have this day repudiated the test for merger set out in Superior Court's *Commonwealth v. Leon Williams* as it relates to whether discreet "Commonwealth interests" have been implicated by two separate convictions arising from one criminal transaction, *see Commonwealth v. Leon Williams*, 521 Pa. 556, 559 A.2d 25 (1989), we nevertheless agree with Superior Court that it would be an abuse of the merger doctrine if it were used to give the criminal "rights" to unlimited violence in perpetrating any of the crimes requiring violence or threat of violence as an element. As Superior Court stated in *Leon Williams:*

A robbery can be carried out by the infliction of serious injury, but it can also be accomplished by mere threats of force ("terroristic threats") or simple assault; the commission of robbery by these or any means does not give the robber carte blanche to engage in as many repeated attempts on the life or well-being of the victim as the

circumstances allow. If a court were nevertheless to merge the offenses of robbery and aggravated assault as a matter of routine, it might defeat whatever legislative purpose there was in identifying the taking of property by force and the doing of physical harm to persons as two separate and distinct means of injuring the Commonwealth.... It might also permit the defendant to escape liability for one of two separate and distinct crimes which he has committed and should justly pay for. We cannot allow our merger doctrine to act as an open invitation to violent assailants to go ahead and perpetrate actual physical injury on their victims after having robbed or raped them by putting them in fear of such injury. This would clearly be an abuse of a doctrine whose salutary purpose is to prevent the imposition of multiple sentences on a single criminal offense.

*Commonwealth v. Leon Williams*, 344 Pa.Super. 108, 133–34, 496 A.2d 31, 45 (1985). We agree with Superior Court that when multiple acts of violence accompany another crime which requires violence or threat of violence as an element, convictions of multiple violent acts should not merge for sentencing purposes beyond that which is necessary to supply the element of violence or threat for the additional crime.

In this case, as in the companion case of *Commonwealth v. Leon Williams*, 518 Pa. 639, 542 A.2d 1369, also decided this day, it has been our goal to simplify and explain the doctrine of merger as it relates to the facts presented. In *Leon Williams* we held that where the same facts are used to support convictions for crimes having different elements, the crimes do not merge for sentencing purposes, unless the same facts support convictions of lesser included offenses. That holding does not apply to the present case because the problem here is not whether the same facts support multiple convictions, but whether facts in evidence *additional* to those facts establishing aggravated assault, i.e., that James Weakland continued to threaten Mr. Wilson with a handgun, should have been used to satisfy the threat or force

364

requirement of kidnapping. It is our view that the additional facts should be used to satisfy the force or threat element of kidnapping, for otherwise, a violent criminal would be permitted to perpetrate multiple crimes while suffering only partial liability for the harm he has wrought.

For the foregoing reasons, we hold that if a person commits one act of criminal violence, and that act is the only basis upon which he may be convicted of another crime, the act will merge into the other crime. If, however, the actor commits multiple criminal acts beyond that which is necessary to establish the bare elements of the additional crime, then the actor will be guilty of multiple crimes which do not merge for sentencing purposes. In this case, merger of the aggravated assault conviction into the kidnapping conviction was inappropriate because the act of holding Mr. Williams at gunpoint was separate and apart from the aggravated assault and was sufficient to supply the element of threat necessary for the kidnapping conviction.

Order of Superior Court is reversed.

PAPADAKOS, J., files a concurring and dissenting opinion which is joined by LARSEN, J.

McDERMOTT, J., files a dissenting opinion joined by LARSEN, J.

PAPADAKOS, Justice, concurring and dissenting.

While I agree that the order of the Superior Court must be reversed, I cannot join that portion of the majority opinion which discusses why Appellee's kidnapping and assault convictions should not merge because it repudiates our analysis recently enunciated in *Commonwealth v. Michael Williams*, 514 Pa. 124, 522 A.2d 1095 (1987).

Using the *Michael Williams* analysis, I am satisfied that our aggravated assault statute protects substantially different interests than does our kidnapping statute. The former protects the bodily integrity of the victim. The latter variously prevents felons from shielding attempted flight with innocent hostages, prevents the taking of persons for

ransom, and prevents various other kinds of criminal victimization which often follows the taking and isolation of a kidnap victim. Since substantially different interests underly both statutes, I have no hesitancy in concluding that Appellee should have been sentenced on both convictions.

While I have serious questions as to the majority's wisdom in discarding the *Michael Williams* analysis, I am still more concerned with the test substituted for the *Michael Williams* analysis. If I understand the majority correctly, if a person commits one act of criminal violence and that act is the only basis upon which he may be convicted of another crime, the act will merge into the other crime. Thus, arsonists should be comforted in the knowledge that they can burn down our homes, with our families in them, and be convicted of one crime. So, too, murderers can drive into a crowd of pedestrians killing and maiming at will and be convicted only of one crime. Is the majority also discarding our holding in *Commonwealth v. Frisbie*, 506 Pa. 461, 485 A.2d 1098 (1984)? The wisdom of such logic escapes me but since we have now abrogated our duty to look at the *legislature's* intent in determining how to apply their sentencing scheme, maybe the next step will be to ignore the Crimes Code altogether and promulgate our own Crimes Code. The future should be interesting, but criminals should take heart for they have a friend in the Pennsylvania Supreme Court.

LARSEN, J., joins this concurring and dissenting opinion.

McDERMOTT, Justice, dissenting.

I dissent and note this case as an illustration of the reasons for my dissent in *Commonwealth v. Leon Williams*, 521 Pa. 556, 559 A.2d 25 (1989). Here is an example of separate, distinct crimes for the price of one. A clear example of the confusion the majority has generated by their holding in *Williams, supra.*

LARSEN, J., joins in this dissenting opinion.