**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**Harmon WESLEY, Appellant**

Superior Court of Pennsylvania.

Argued Feb. 24, 2004.
Filed Oct. 14, 2004.

Jules Epstein, Philadelphia, for appellant.

Mary Huber, Asst. Dist. Atty., Philadelphia, for Commonwealth, appellee.

Before: TODD, PANELLA, and JOHNSON, JJ.

TODD, J.

¶ 1 Harmon Wesley, a/k/a Wesley Harmon, appeals the judgment of sentence imposed by the Philadelphia County Court of Common Pleas after he was convicted by a jury of attempted murder,[1] aggravated assault,[2] and possession of an instrument of crime.[3] We affirm.

¶ 2 The relevant facts of the instant case are as follows: On May 1, 2000, Appellant approached the victim, Tyrone Mitchell, outside of the Green Leaf Apartments in Philadelphia, where Appellant's girlfriend resided. Appellant accused Mitchell, who was a maintenance worker and a tenant at the apartment complex, of breaking into Appellant's girlfriend's apartment. During the conversation, Mitchell's five-year-old son ran up to Mitchell from behind, and Mitchell turned to pick up his son. As Mitchell's back was turned, Appellant shot Mitchell once in the back. Mitchell then pushed his son out of the way and turned around, momentarily grabbing Appellant's gun. Appellant then shot Mitchell in the finger, and at least five more times in the stomach and leg. Mitchell identified Appellant as his assailant on his way to the hospital, where he remained in a coma for more than one month.

¶ 3 On May 12, 2000, while on burglary surveillance in an unmarked vehicle, two police officers observed Appellant on the porch of a house in Philadelphia. The officers exited their vehicle, at which time Appellant ran into the house. Appellant ran out of the back of the house, and a

---

1.  18 Pa.C.S.A. §§ 901, 2502.

2.  18 Pa.C.S.A. § 2702.

3.  18 Pa.C.S.A. § 907.

chase ensued. One of the officers caught up to Appellant, and ordered Appellant to drop his weapon, a small black handgun. Appellant, however, pointed the gun at the officer. Although Appellant eluded the police on this date, he subsequently was arrested on June 7, 2002. Appellant was charged with attempted murder, aggravated assault, and possession of an instrument of crime based on the May 1 shooting of Mitchell. Appellant also was charged with aggravated assault and possession of an instrument of crime based on the May 12 incident involving the police officer.

¶ 4 The aforementioned charges were consolidated for trial, at which Appellant was represented by separate counsel, namely, David Belmont, Esquire, for the May 1 charges and Laurence Narcisi, Esquire, for the May 12 charges. Prior to the start of trial, the trial judge informed Appellant that he would permit only one opening and one closing statement, and that counsel should decide who would deliver each statement. Attorney Belmont gave the opening statement with respect to both cases, and Attorney Narcisi gave the closing statement with respect to both cases. Ultimately, Appellant was convicted of the May 1 charges, and the charges based on the May 12 incident were dismissed following a hung jury. On May 15, 2003, Appellant was sentenced to an aggregate term of 32½ to 65 years in prison.

¶ 5 In the instant appeal, Appellant asserts the following:

1. Appellant was denied his United States and Pennsylvania Constitutional guarantee of the right to counsel when the trial court ruled that Appellant, with two discrete cases and two counsel (one for each case) could have only one attorney of the two open and/or close for his consolidated trial.

2. Appellant was denied his right to due process of law and a fair trial when the trial court committed structural error in its jury charge defining reasonable doubt, as that instruction, by repeatedly defining a reasonable doubt as a substantial doubt (explicitly and by example) impermissibly reduced the prosecution['s] burden of proof. To the extent that trial counsel failed to object to this constitutionally deficient instruction, Appellant separately was denied the effective assistance of counsel.

3. Appellant received an illegal sentence when the trial court imposed consecutive sentences for the crimes of attempted murder and aggravated assault where there was one victim injured in one episode (and trial counsel was ineffective for failing to object to, or seek reconsideration of, the illegal sentence).

(Appellant's Brief at 5.)

¶ 6 Appellant's first issue, wherein he contends that the trial court erred in allowing him only one opening statement and one closing argument even though he was represented by different attorneys for two different sets of charges, appears to be one of first impression in this Commonwealth, as our research has disclosed no case precisely on point. As noted above, however, the May 12 charges against Appellant were dismissed, and Appellant was convicted only of the May 1 charges. Since Appellant's attorney on the May 1 charges did, in fact, make an opening statement, we will confine our analysis to whether the trial court erred in allowing Appellant only one closing argument, which in the instant case was made by Appellant's counsel on the May 12 charges.

¶ 7 Our Supreme Court has stated that "[a] defendant has a right to summation."

*Commonwealth v. Brown,* 544 Pa. 406, 422, 676 A.2d 1178, 1185 (1996). However, the Court also has recognized that certain aspects of a defendant's closing argument are left to the discretion of the trial court. For example, in *Brown* the Court stated:

> [t]he length of closing arguments is left to the discretion of the trial court. "Unless there is such an unreasonable limitation of time that effectively denies a defendant the right to summation a criminal conviction should not be disturbed." *Commonwealth v. Mervin,* 230 Pa.Super. 552, 556–57, 326 A.2d 602, 605 (1974).

544 Pa. at 422, 676 A.2d at 1187; *see also Commonwealth v. Garcia,* 443 Pa.Super. 414, 426, 661 A.2d 1388, 1395 (1995) (the length of closing argument is a matter entirely within the discretion of the trial judge).

¶ 8 In addition, our Supreme Court has rejected claims of trial court error where the trial court required the defendant to make his closing argument before the Commonwealth, and denied the defendant an opportunity to rebut the Commonwealth's closing argument. *See Commonwealth v. Gray,* 441 Pa. 91, 271 A.2d 486 (1970); *Commonwealth v. Toney,* 439 Pa. 173, 266 A.2d 732 (1970) (noting that before the enactment of Pa.R.Crim.P. 1116(b) (now Rule 604), the order of closing arguments was left to the discretion of the trial judge, and the rule was intended to make the practice uniform throughout the Commonwealth); *Commonwealth v. McCarty,* 280 Pa.Super. 102, 421 A.2d 425 (1980).

¶ 9 As this Court explained in *Garcia, supra:*

> Where the discretion exercised by the trial court is challenged on appeal, the party bringing the challenge bears a heavy burden .... [I]t is not sufficient to persuade the appellate court that it

might have reached a different conclusion if, in the first place, charged with the duty imposed on the court below; it is necessary to go further and show an abuse of the discretionary power. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or [the judgment is] the result of partiality, prejudice, bias or ill-will, as shown by the evidence of record, discretion is abused. We emphasize that an abuse of discretion may not be found merely because the appellate court might have reached a different conclusion, but requires a showing of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support as to be clearly erroneous.

443 Pa.Super. at 426, 661 A.2d at 1394–95 (citation omitted).

¶ 10 As noted above, our research has revealed no case law specifically addressing the issue of whether a defendant is entitled to make more than one closing argument when he is represented by separate counsel on separate charges. Rule 604 of the Pennsylvania Rules of Criminal Procedure, however, provides as follows with respect to closing arguments:

> (B) When the evidence is concluded, each party shall be entitled to present one closing argument to the jury. Regardless of the number of defendants, and whether or not a defendant has presented a defense, the attorney for the Commonwealth shall be entitled to make one argument which shall be made last.

Pa.R.Crim.P. 604(B). Thus, subsection (B) of Rule 604 clearly provides that each party is entitled to present *one* closing argument to the jury, and we do not find the

trial court's adherence to the rule to be clearly unreasonable or indicative of bias or ill-will. Thus, we find no error in the trial court's actions.[4] *See Garcia*, 443 Pa.Super. at 427, 661 A.2d at 1395 (noting that the trial court did not abuse its discretion by imposing a 20-minute time limit on Appellant's closing where "defense counsel was an experienced trial attorney who was able to fully, adequately and cogently summarize his position and the pertinent evidence within the allotted time period").

¶ 11 Furthermore, even if we were to conclude that the trial court did, in fact, err in limiting Appellant to one closing argument, we note that any such error was harmless, as Appellant herein has failed to allege, let alone demonstrate, that he suffered any prejudice. Appellant does not indicate what Attorney Belmont would have added to Attorney Narcisi's closing argument, nor does he contend that Attorney Narcisi misstated any facts with respect to the May 1 charges. *See Brown*, 544 Pa. at 422, 676 A.2d at 1185 (noting that the appellant failed to state how he was prejudiced by the time limitation or what could have been done if more time had been allowed). Indeed, Attorney Narcisi was present throughout Appellant's entire trial on all of the charges, and therefore necessarily was familiar with the facts of Appellant's case. Moreover, Appellant's counsel was advised at the beginning of trial that the court would permit only one of them to make a closing argument; thus, counsel had adequate time to confer with each other regarding the content of Appellant's closing. Under these circumstances, we find that if there were any error by the trial court in limiting Appellant to one closing argument it would

have been harmless. Accordingly, we hold that Appellant is not entitled to relief on the basis that he was limited to one closing argument.

¶ 12 Appellant next argues that the trial court erred in its instruction to the jury regarding the definition of reasonable doubt. We note that Appellant concedes that trial counsel failed to object to the jury instruction when it was given. As such, Appellant has waived this issue. *See Commonwealth v. Gooding*, 818 A.2d 546, 552 (Pa.Super.2003) (stating that in order to preserve a challenge to the jury charge, the appellant was required to make a timely, specific objection before the jury retired). Appellant, however, seeks to obtain review of this claim by arguing that his trial counsel was ineffective for failing to object to the jury instruction.

¶ 13 In *Commonwealth v. Grant*, 572 Pa. 48, 813 A.2d 726 (2002), our Supreme Court recognized the inherent problems in requiring an appellant to raise an ineffectiveness claim at the first opportunity after obtaining new counsel. Specifically, the Court noted that such a requirement often precludes the trial court from reviewing claims related to trial counsel's error, when in fact the trial court is in the best position to review such claims, and forces the appellate court to review the claims based on a record that is not sufficiently developed. *Id.* at 64–66, 813 A.2d at 736–37. Therefore, the Court held that, "as a general rule, a petitioner should wait to raise claims of ineffective assistance of trial counsel until collateral review." *Id.* at 67, 813 A.2d at 738. In accordance with *Grant*, we dismiss Appellant's ineffective-

---

**4.** To the extent Appellant suggests that he was denied counsel, we find this allegation be without merit. Appellant clearly was represented by counsel at all stages of his trial, and, as noted above, counsel who delivered Appellant's closing argument addressed both of the cases pending against Appellant.

ness claim without prejudice to raise it in a collateral proceeding.[5]

■ ¶ 14 Finally, Appellant contends that by imposing consecutive sentences for the crimes of attempted murder and aggravated assault, the trial court imposed an illegal sentence.[6] Specifically, Appellant argues that "[i]n a single-episode assault with a single victim, the crimes of attempted murder and aggravated assault merge for sentencing purposes." (Appellant's Brief at 24.)

¶ 15 Our Supreme Court has recognized:

The question of when sentences should merge is not an easy problem .... Analytically, the problem concerns whether a single criminal plan, scheme, transaction or encounter, which may or may not include many criminal acts, may constitute more than one crime, and if it may constitute several crimes, whether each criminal conviction may be punished separately or whether the sentences merge.

*Commonwealth v. Anderson*, 538 Pa. 574, 576–77, 650 A.2d 20, 21 (1994).

¶ 16 More recently, our Supreme Court, in *Commonwealth v. Gatling*, attempted to clarify the appropriate analysis for deter-

mining when convictions should merge for the purposes of sentencing:

The preliminary consideration is whether the facts on which both offenses are charged constitute one solitary criminal act. If the offenses stem from two different criminal acts, merger analysis is not required. If, however, the event constitutes a single criminal act, a court must then determine whether or not the two convictions should merge. In order for two convictions to merge: (1) the crimes must be greater and lesser-included offenses; and (2) the crimes charged must be based on the same facts. If the crimes are greater and lesser-included offenses and are based on the same facts, the court should merge the convictions for sentencing; if either prong is not met, however, merger is inappropriate.

570 Pa. 34, 48–49, 807 A.2d 890, 899 (2002) (plurality) (footnote omitted). The Court defined "the same facts" as "any act or acts which the accused has performed and any intent which the accused has manifested, regardless of whether these acts and intents are part of one criminal plan, scheme, transaction or encounter, or multiple criminal plans, schemes, transactions or encounters." *Id.* at 49 n. 9, 807 A.2d at

---

**5.** We disagree with Appellant's assertion that the instant case presents an exception to *Grant* because "there can be no reason to agree to an unconstitutional conviction, and the sole issue is one found of record, i.e., the language used in the Court's reinstruction." (Appellant's Brief at 19.) Due to Appellant's failure to raise his ineffectiveness issue before the trial, there was no hearing on the issue, and we are faced with an undeveloped record. Moreover, as Appellant did not include his claim in a Statement of Matters Complained of on Appeal pursuant to Rule 1925(b) of the Pennsylvania Rules of Appellate Procedure, the trial court did not address this issue in its opinion. *Cf. Commonwealth v. Bomar*, 573 Pa. 426, 463–66, 826 A.2d 831, 853–55 (2003) (holding that *Grant* did not apply since the ineffectiveness claims were raised in a

post-sentence motion and fully developed at a hearing in the trial court, the trial court addressed the issue in its opinion, and appellate review therefore was not hampered).

**6.** Appellant failed to raise this issue before the trial court and again attempts to overcome this failure by asserting that trial counsel was ineffective for failing to object to or seek reconsideration of Appellant's sentence. However, in that a claim that crimes should have merged for sentencing purposes challenges the legality of a sentence, such a claim cannot be waived. *Commonwealth v. Duffy*, 832 A.2d 1132, 1136 (Pa.Super.2003). Accordingly, we will address the merits of Appellant's claim.

899 n. 9 (citing *Anderson,* 538 Pa. at 579, 650 A.2d at 22).

¶ 17 In *Gatling,* our Supreme Court reversed this Court's holding in *Commonwealth v. Smith,* 772 A.2d 75 (Pa.Super.2001) (*en banc*), that the convictions at issue merged for sentencing purposes.[7] The Court determined that because there was a break in the chain of events that separated the first crime from the second, regardless of whether the elements of one were subsumed within the other, the convictions did not merge. *Gatling,* 570 Pa. at 50–51, 807 A.2d at 900. *Gatling* is a plurality decision, however, and the break-in-the-chain analysis did not garner the support of a majority of the justices. While it is clear under both this Court's decision in *Smith* and our Supreme Court's decision in *Gatling* that in conducting a merger analysis, a court must first determine whether the offenses arose from a solitary criminal episode, we must look to prior case law to assess what constitutes a solitary criminal episode.[8]

¶ 18 In *Commonwealth v. Anderson, supra,* our Supreme Court held that "in all criminal cases, the same facts may support multiple convictions and separate sentences for each conviction except in cases where the offenses are greater and lesser included offenses." 538 Pa. at 579, 650 A.2d at 22. The Court explained:

> Our concern . . . is to avoid giving criminals a "volume discount" on crime. If multiple acts of criminal violence were regarded as part of one larger criminal transaction or encounter which is punishable only as one crime, then there would be no legally recognized difference between a criminal who robs someone at gunpoint and a criminal who robs the person and during the same transaction or encounter pistol whips him in order to effect the robbery. But in Pennsylvania, there is a legally recognized difference between these two crimes. The criminal in the latter case may be convicted of more than one crime and sentences for each conviction may be imposed where the crimes are not greater and lesser included offenses.

*Id.* at 579–80, 650 A.2d at 22.

¶ 19 Later, in *Commonwealth v. Belsar,* 544 Pa. 346, 676 A.2d 632 (1996), our Supreme Court reiterated a portion of its prior holding in *Commonwealth v. Weakland,* 521 Pa. 353, 555 A.2d 1228 (1989), stating "[i]f . . . the actor commits multiple criminal acts beyond that which is necessary to establish the bare elements of the additional crime, then the actor will be guilty of multiple crimes which do not merge for sentencing purposes." *Belsar,* 544 Pa. at 351, 676 A.2d at 634 (quoting *Weakland,* 521 Pa. at 364, 555 A.2d at 1233). The Court further explained in *Belsar,* "[w]hen a criminal act has been committed, broken off, and then resumed, at least two crimes have occurred and sentences may be imposed for each." *Id.* at 351–52, 676 A.2d at 634. Thus, in *Belsar,* where the appellant shot the victim five times, paused to look for the victim's car keys, then kicked the victim upon discovering that she was still alive, the Court determined that these were separate criminal acts justifying separate sentences for attempted murder (for the shooting), and aggravated assault (for the kicking). *Id.*

¶ 20 With this background in mind, we now assess whether Appellant's

---

**7.** In *Commonwealth v. Smith,* this Court addressed the consolidated appeals of Walter Smith and Earnest Gatling. However, only Gatling appealed this Court's *en banc* decision to the Pennsylvania Supreme Court.

**8.** Where the offenses do not arise from a single criminal episode, it is clear that no further analysis is required.

actions constitute one criminal episode. We note that a person is guilty of aggravated assault if, *inter alia,* he "attempts to cause or intentionally or knowingly causes bodily injury to another with a deadly weapon." 18 Pa.C.S.A. § 2702(a)(4). A person is guilty of attempted murder if he takes "a substantial step towards an intentional killing." *Anderson,* 538 Pa. at 580, 650 A.2d at 23. The testimony at trial established that Appellant initially shot the victim in the back as the victim turned and bent down to pick up his young son. By causing serious bodily injury to the victim with a gun, namely, wounding the victim in the back, Appellant committed aggravated assault. After the victim pushed his son out of the way, he turned around and grabbed Appellant's gun, at which time Appellant then fired the gun, blowing off the victim's finger. Appellant immediately shot the victim five more times, hitting the victim in the stomach and leg. This second series of gunshots clearly demonstrated a substantial step by Appellant toward the intentional killing of the victim, and thus constituted attempted murder. We thus conclude that Appellant's actions constituted two separate criminal acts. As such, we find no error in the trial court's refusal to merge the charges of aggravated assault and attempted murder for sentencing purposes.

¶ 21 Accordingly, for all of the reasons set forth above, we affirm Appellant's judgment of sentence.

¶ 22 Judgment of sentence AFFIRMED.