J-S06008-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| RUDOLPH WOODSON | |
| Appellant | No. 2444 EDA 2015 |

Appeal from the Judgment of Sentence July 20, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0003786-2014

BEFORE:  MOULTON, J., RANSOM, J., and FITZGERALD, J.[*]

MEMORANDUM BY MOULTON, J.:                **FILED DECEMBER 27, 2017**

Rudolph Woodson appeals from the July 20, 2015 judgment of sentence entered in the Philadelphia County Court of Common Pleas following his bench trial convictions for criminal attempt to commit murder – serious bodily injury caused, aggravated assault, simple assault, recklessly endangering another person ("REAP"), and possessing an instrument of crime ("PIC").[1]  We affirm.

The trial court set forth the following factual and procedural history:

> On January 24, 2014, . . .  Woodson[] was arrested and charged with [the aforementioned offenses].  [Woodson] went to trial before this Court on March 16, 2015 . . . .

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 901(a), 2702(a)(1), 2701(a)(1), 2705, and 907(a), respectively.

At the trial for [Woodson], the complainant, [("Victim")], testified that she had first met [Woodson] about a month or two before January 24, 2014 and they had hung out a few times prior to that date. She testified that in the late hours of January 23, 2014, [Woodson] had picked her up so that the two of them could go out to eat. Before they went to go eat, she testified that [Woodson] asked her if she wanted to get some drugs and they went to her neighborhood to buy some [phencyclidine ("PCP")]. After buying the PCP, they then went back to [Woodson]'s house . . . [on] Butler Street in Philadelphia, PA. [Victim] testified that once at his house, they went up to his bedroom where she had been before and they sat on his bed where they talked and [Woodson] smoked the PCP. She testified that [Woodson] then left the room and when he came back in the room he jumped on her while she was sitting on the bed and started stabbing her. [Victim] testified that [Woodson] was stabbing her everywhere "in my face and my neck…. he stabbed me in my hand, stabbed me in my wrist, he stabbed me right here.["] [Victim] went on to show the Court all the places on her body where she had been stabbed or cut and pictures of her injuries [were] admitted into evidence.

[Victim] testified that at some point [Woodson] stopped stabbing her and walked out of the room. When she tried to leave [Woodson] pushed her back into another room and "started stabbing me more and hitting me in the head and bent over me, threatening me, and talking trash."[2] [Woodson] then started to wipe up the blood and that is when [Victim] tried to use her phone to call her sister and 9-1-1. [Woodson] told her to get up and leave so she managed to get down the steps and went out the front door. When she got outside she initially fell to the ground but was able to get herself back up and make it over to the Checkers by his house where she laid down near a telephone pole. [Woodson] followed her in his van and tried to get her to go inside but she would not. At that point the police officers arrived on the scene.

_____

[2] Victim further testified that "[h]e kept coming back looking at me talking trash. And every time he came towards me, he would kick me or hit me in the head with something." N.T., 3/16/15, at 82.

- 2 -

Police Officers Ray Sutton and Jacqueline McAllister both testified that on January 24, 201[4], they responded to a call to go [to] Broad and Butler Streets. Officer Sutton testified that when he and his partner arrived at the location, he observed [Victim] laying down in a fetal position in the snow near a telephone pole close to Checkers. There was blood around her. Officer McAllister testified that [Victim] was unresponsive and that she had blood all over her face, her head, her neck, and her chest. She tried to say something to the officers at first but then she went completely out of it. The officer then called for an ambulance. Both officers testified that [Woodson] was there at the scene and that he did not have any visible signs of injury nor did h[e] tell them he needed any medical attention. Officer Sutton testified that [Woodson] stated to them that he had stabbed [Victim] after the two of them had been involved in an altercation. [Woodson] was then placed under arrest and put into the back of the police vehicle. [Woodson] told the officers that the incident occurred at his home [on] Butler Street. [Woodson] indicated to them that the knife he had washed off [was] in the kitchen. Officer McAllister testified that he then went over to [Woodson]'s home to secure the scene. When he arrived there, he noticed blood on the doorway leading up to the steps, blood on the wall all the way up the steps, blood all over the hallway, and blood all over the room, on the mattress, and on the floor. The pictures of the crime scene that were taken were placed into evidence which Officer McAllister described for the Court. Police Officer Edward Fidler from the Philadelphia [Police C]rime [S]cene [U]nit also testified and described the photographs that were admitted into evidence depicting the crime scene and the knife that was recovered from [Woodson]'s home.

Trial Ct. Op., 2/9/16, at 2-4 (citations omitted). In addition, Thomas A. Santora, M.D., testified that on the morning of January 24, 2014, Victim arrived at Temple University Hospital with multiple stab and slash wounds about the face and neck. N.T., 3/19/15, at 6. She had low blood pressure and "her life was in jeopardy." *Id.* He stated that "had it not been for the

fact [Victim] was exposed to the cold, I suspect the degree of bleeding and the consequences therefrom would have been more life threatening than they were. But they were clearly life threatening when she presented." *Id.* at 11-12. Dr. Santora stated that Victim suffered multiple injuries including that her "internal jugular vein was completely severed" and a facial nerve was severed. *Id.* at 12-15. Further, Oneida Arosarena, M.D., who assisted with the treatment of Victim's facial lacerations, including surgery on Victim's facial nerve, testified that Victim's injuries were severe. *Id.* at 21-25.

Following a bench trial, the trial court found Woodson guilty of attempted murder, aggravated assault, simple assault, REAP, and PIC. On July 20, 2015, the trial court sentenced Woodson to 15 to 40 years' incarceration on the attempted murder conviction,[3] a consecutive 2½ to 5 years' incarceration for the PIC conviction, and a consecutive 1 to 2 years' incarceration for the REAP conviction, for an aggregate sentence of 18½ to 47 years' incarceration.

On August 13, 2015, Woodson timely filed a notice of appeal. Counsel initially submitted a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967), and a petition to withdraw as counsel. On June 29, 2017, after Woodson filed a response to counsel's *Anders* brief, this Court denied the petition to withdraw and directed counsel to file an advocate's brief. Counsel

---

[3] Aggravated assault and simple assault merged with attempted murder for sentencing purposes.

- 4 -

complied, and filed his brief on August 14, 2017. The Commonwealth filed a responsive brief on November 30, 2017.

Woodson now raises the following claim:

> Is [Woodson's] forty-year maximum sentence for attempted murder illegal where he was sentenced for attempted murder — serious bodily injury caused, but where the criminal complaint and information only charged him with attempted murder generally, and as such, [Woodson] was not on notice that he needed to defend the charge, and where the factfinder was thus not tasked with finding beyond a reasonable doubt that [Woodson] caused serious bodily injury during the attempted murder?

Woodson's Br. at 4.

## 1. Sentence for Attempted Murder

Section 1102(c) of the Crimes Code provides:

> **(c)  Attempt,  solicitation  and  conspiracy.--** Notwithstanding section 1103(1) (relating to sentence of imprisonment for felony), a person who has been convicted of attempt . . . to commit murder . . . where serious bodily injury results may be sentenced to a term of imprisonment which shall be fixed by the court at not more than 40 years. Where serious bodily injury does not result, the person may be sentenced to a term of imprisonment which shall be fixed by the court at not more than 20 years.

18 Pa.C.S. § 1102(c). We have explained that "[s]ection 1102(c) 'imposes a condition precedent to the imposition of a maximum term of imprisonment of up to 40 years, specifically, that 'serious bodily injury' must have resulted from the attempted murder. Otherwise, the sentence shall be not more than 20 years.'" **Commonwealth v. Barnes**, 167 A.3d 110, 117 (Pa.Super. 2017) (*en banc*) (quoting **Commonwealth v. Johnson**, 910 A.2d 60, 66 (Pa.Super.

- 5 -

2006)). Further, we have held that "[s]erious bodily injury is 'a fact that must be proven before a maximum sentence of [40] years may be imposed for attempted homicide,'" *id.* (alteration in original) (quoting **Commonwealth v. Reid**, 867 A.2d 1280, 1281 (Pa. Super. 2005), and "a defendant must be put on notice when the Commonwealth is seeking a 40–year maximum sentence for attempted murder," *id.* Further, we have held that "any finding by the jury of serious bodily injury for aggravated assault [can]not be used to infer that the jury found serious bodily injury for the attempted murder charge." *Id.* at 119.

In **Commonwealth v. Johnson**, this Court held "that under **Apprendi v. New Jersey**, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000),[4] it was not the prerogative of the trial court, but solely the responsibility of the jury . . . to find, beyond a reasonable doubt, whether a serious bodily injury

---

4 The United States Supreme Court in **Apprendi** held:

> Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt. With that exception, we endorse the statement of the rule set forth in the concurring opinions in [**Jones v. United States**, 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999)]: "It is unconstitutional for a legislature to remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed. It is equally clear that such facts must be established by proof beyond a reasonable doubt."

**Apprendi**, 530 U.S. at 490.

resulted from the instant attempted murder." 910 A.2d 60, 67 (Pa.Super. 2006). We determined that the verdict "was limited to a finding of guilt on the crime of attempted murder generally, for which the maximum sentence is twenty years." *Id.* at 68. We reasoned that the Commonwealth had not charged the defendant with attempted murder resulting in serious bodily injury, the defendant "was not on notice that the Commonwealth sought either to prove that a serious bodily injury resulted from the attempted murder or to invoke the greater maximum sentence," and the jury was not asked, and did not render a decision on, the question of whether the attempted murder resulted in serious bodily injury. *Id.* at 67-68. We concluded that the sentence imposed for attempted murder, 17½ to 40 years' imprisonment, was therefore illegal. *Id.* at 68.

Similarly, in **Barnes**, this Court held that application of the 40-year maximum sentence was illegal where the Commonwealth did not charge the defendant with attempted murder resulting in serious bodily injury, the defendant "was not on notice that the Commonwealth sought to prove that a serious bodily injury resulted from attempted murder or to invoke the greater maximum sentence," and "most importantly for purposes of **Apprendi**, the jury was never presented with, nor rendered a decision on, the question of whether a serious bodily injury resulted from the attempted murder." 167 A.3d at 118-19.

In contrast, in **Reid**, we found application of the 40-year maximum sentence legal, even though the information had not charged the defendant

with attempted murder resulting in serious bodily injury,[5] where the defendant pled *nolo contendere* to one count of attempted homicide. 867 A.2d at 1282-84. This Court noted that the defendant did not contest the summary of facts, which established that the victim suffered serious bodily injury, and that the defendant accepted a plea to attempted homicide explicitly graded as a felony of the first degree with a maximum sentence of 40 years' imprisonment. **Id.** at 1283. We concluded that "[t]he record simply fails to support Appellant's claim that he was never apprised of the fact that he was charged with, and pleading *nolo contendere* to, attempted homicide graded as a first-degree felony carrying a maximum sentence of forty years." **Id.**

### a. Relevant Procedural History

The criminal information charged Woodson with "[m]urder – [c]riminal [a]ttempt," and did not mention that the attempt caused serious bodily injury. The criminal complaint alleged that Woodson "attempted to kill [Victim] by producing a knife and stabbing her multiple times on the face, head and upper torso, thereby causing [Victim] injury requiring medical attention." Criminal Compl., 1/25/14.

Although both the written jury waiver form and the oral colloquy informed Woodson that he faced a 40-year maximum sentence, neither

---

[5] In **Reid**, the information did not mention the element of serious bodily injury; the information charged the defendant with "Criminal Attempt to [commit] Criminal Homicide (FELONY-$50,000.00-40 years) with the intent to commit the crime of Criminal Homicide, do [sic] an act which constituted a substantial step toward the commission of that crime." 867 A.2d at 1284 (alteration in original).

referenced the serious-bodily-injury element required for application of that maximum. Specifically, in his written jury trial waiver form, Woodson acknowledged a possible maximum sentence of 40 years. *See* Jury Tr. Waiver Colloquy, 3/16/15, at 3. Further, at the oral colloquy, the following exchange occurred:

> THE COURT: Do you have any questions about the charges against you, sir?
>
> [WOODSON]: I been pretty much familiar with them.
>
> THE COURT: I'll just go over them now.
>
> **Attempted murder is a felony of the first degree. It has a maximum sentence of 40 years in prison** and a $25,000 fine. Aggravated assault is a felony of the first degree. You can go to jail for 20 years and get a $25,000 fine. Do you have any questions about those charges?
>
> [WOODSON]: No.

N.T., 3/16/15, at 7 (emphasis added).

At the conclusion of the trial, the trial court stated: "I find the defendant guilty as charged. I have the self-defense jury instruction here. . . . And I find beyond a reasonable doubt that he intended to kill her with a knife and that he caused serious bodily injury." N.T., 3/19/15, at 37.

### b. Trial Court as Fact-Finder Concluded Beyond a Reasonable Doubt that Woodson's Attempt to Commit Murder Caused Serious Bodily Injury

Woodson argues that "the factfinder here never found that the attempted murder committed by [Woodson] caused the serious bodily injury suffered by the victim." Woodson Br. at 10. This claim presumably is

premised on this Court's conclusion in **Johnson** and **Barnes** that a jury finding of serious bodily injury in connection with a charge of aggravated assault is not sufficient to establish that an attempted murder charge involved a serious bodily injury. **Johnson**, 910 A.2d at 68 n.10; **Barnes**, 167 A.3d at 119-20. This claim, while not frivolous, is belied by the record.

In rendering its verdict, the trial court stated:

> I find the defendant guilty as charged. . . . And I find beyond a reasonable doubt that he intended to kill her with a knife and that he caused serious bodily injury.

N.T., 3/19/15, at 37. The only reasonable inference from this statement is that the trial court found, beyond a reasonable doubt, that the attempted murder caused serious bodily injury. This is particularly true in light of the trial court's prior colloquy, in which it informed Woodson that he faced a 40-year maximum sentence, which would apply only if the attempted murder resulted in serious bodily injury. Accordingly, we conclude that the trial court made a finding that the attempted murder resulted in serious bodily injury.

Unlike **Johnson** and **Barnes**, we are not asked to conclude that a finding of serious bodily injury in connection with a charge of aggravated assault is sufficient to substitute for a similar finding in connection with attempted murder. Here the trial court, as fact-finder, made a determination that the **attempted murder** resulted in serious bodily injury.

### c. Notice That Commonwealth Sought 40-Year Maximum Sentence and Alleged Serious Bodily Injury

The issue of notice has two components: (1) whether the defendant is aware of the maximum penalty for the crime charged; and (2) whether the defendant was aware that the Commonwealth alleged that the attempted murder resulted in serious bodily injury.

First, Woodson was aware that he faced a statutory maximum of 40 years' imprisonment if convicted of attempted murder. He signed a written colloquy form waiving his right to a jury trial stating that he understood he faced a 40-year maximum sentence for attempted murder. Further, during the oral colloquy, the trial court informed him of the 40-year maximum sentence.

Second, Woodson had notice that the Commonwealth alleged the attempted murder caused serious bodily injury. The information charged "Murder – Criminal Attempt," without mention of a statutory maximum or that the attempt resulted in serious bodily injury. However, although the criminal complaint does not use the term "serious bodily injury," it did allege that Woodson "attempted to kill [Victim] by producing a knife and stabbing her multiple times on the face, head and upper torso, **thereby causing [Victim] injury requiring medical attention**." Criminal Compl., 1/25/14. Further, as noted above, Woodson was aware that the statutory maximum applicable to the attempted-murder conviction was 40 years' imprisonment, which is only the maximum if the attempted murder caused serious bodily injury. Woodson also was aware of the alleged facts, and at trial he defended against the

- 11 -

charges by claiming self-defense.[6]  Similar to the record in **Reid**, the record here does not support the contention that Woodson was unaware that that the Commonwealth sought application of the 40-year maximum sentence and alleged the attempted murder resulted in serious bodily injury.

## 2. Issues Raised In *Anders* Brief

We next address the issues raised in the original **Anders** brief, which we did not address in our previous memorandum:  (1) whether the evidence was sufficient to support the convictions; (2) whether the verdict was against the weight of the evidence; (3) whether the sentence was illegal; and (4) whether the trial court erred in applying the discretionary aspects of sentence.

### a. Sufficiency of the Evidence

We apply the following standard when reviewing a sufficiency of the evidence claim:

> [W]hether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt.  In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder.  In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence.  Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak

---

[6] Although aware of Victim's injuries, and although serious bodily injury was also an element of the aggravated assault charge, Woodson's counsel did not challenge the seriousness or extent of the injuries.  Nor would such a challenge have been successful, particularly in light of Dr. Santora's testimony that Victim's injuries were life-threatening when she presented to the hospital and Dr. Arosaren's testimony that Victim's injuries were severe.

and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [finder] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Best*, 120 A.3d 329, 341 (Pa.Super. 2015) (quoting *Commonwealth v. Harden*, 103 A.3d 107, 111 (Pa.Super. 2014)) (some alterations in original).

"A person may be convicted of attempted murder 'if he takes a substantial step toward the commission of a killing, with the specific intent in mind to commit such an act.'" *Commonwealth v. Jackson*, 955 A.2d 441, 444 (Pa.Super. 2008) (quoting *Commonwealth v. Dale*, 836 A.2d 150, 152 (Pa.Super. 2003)). Further:

"The *mens rea* required for first-degree murder, specific intent to kill, may be established solely from circumstantial evidence." *Commonwealth v. Schoff*, 911 A.2d 147, 160 (Pa.Super.2006). "[T]he law permits the fact finder to infer that one intends the natural and probable consequences of his acts[.]" *Commonwealth v. Gease*, 548 Pa. 165, 696 A.2d 130, 133 (1997).

*Id.* (alterations in original). "Specific intent to kill can be inferred from the use of a deadly weapon upon a vital part of the victim's body." *Commonwealth v. DeJesus*, 860 A.2d 102, 106 (Pa. 2004). Further, as discussed above, for application of the 40-year statutory maximum, the Commonwealth must establish the attempted murder caused serious bodily

injury. 18 Pa.C.S. § 1102(c). The Crimes Code defines "serious bodily injury" as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S. § 2301.

Regarding a claim of self-defense, we have stated:

> If the defendant properly raises "self-defense under Section 505 of the Pennsylvania Crimes Code, the burden is on the Commonwealth to prove beyond a reasonable doubt that the defendant's act was not justifiable self-defense." **Commonwealth v. McClendon**, 874 A.2d 1223, 1229–30 (Pa.Super.2005).
>
>> The Commonwealth sustains this burden if it establishes at least one of the following: 1) the accused did not reasonably believe that he was in danger of death or serious bodily injury; or 2) the accused provoked or continued the use of force; or 3) the accused had a duty to retreat and the retreat was possible with complete safety.
>
> **Commonwealth v. Hammond**, 953 A.2d 544, 559 (Pa.Super.2008), *appeal denied,* 600 Pa. 743, 964 A.2d 894 (2009) (quoting **McClendon,** supra at 1230). The Commonwealth must establish only one of these three elements beyond a reasonable doubt to insulate its case from a self-defense challenge to the evidence. **Commonwealth v. Burns**, 765 A.2d 1144, 1149 (Pa.Super.2000), *appeal denied,* 566 Pa. 657, 782 A.2d 542 (2001). The Commonwealth can negate a self-defense claim if it proves the defendant did not reasonably believe he was in imminent danger of death or great bodily injury and it was necessary to use deadly force to save himself from that danger. **Commonwealth v. Sepulveda**, 618 Pa. 262, 288–89, 55 A.3d 1108, 1124 (2012).

**Commonwealth v. Smith**, 97 A.3d 782, 787 (Pa.Super. 2014).

The Commonwealth presented evidence that Woodson repeatedly stabbed Victim, severing Victim's jugular artery and facial nerve, among other injuries. We conclude that the evidence was sufficient to establish that Woodson took a substantial step toward a killing, that he caused serious bodily injury, and that, particularly in light of the testimony that Woodson repeatedly used a knife on vital body parts, he had a specific intent to kill. Further, the Commonwealth presented sufficient evidence to defeat Woodson's claim of self-defense. Specifically, Victim's testimony describing the assault and the officers' testimony that Woodson had no signs of injury and did not seek medical attention, together established that Woodson did not reasonably believe he was in danger of death or serious bodily injury

A person may be convicted of aggravated assault if he "attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life." 18 Pa.C.S. § 2702(a)(1). A person may be convicted of simple assault if he "attempts to cause or intentionally, knowingly or recklessly cases bodily injury to another." 18 Pa.C.S. § 2701.

Again, the evidence established that Woodson repeatedly attacked Victim with a knife, causing serious injuries. This evidence is sufficient to establish he intentionally, knowingly, or recklessly caused serious bodily injury, and, therefore, sufficient to establish aggravated assault and the lesser-included offense of simple assault.

A person is guilty of REAP if he "recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury." 18 Pa.C.S. § 2705. The Commonwealth presented evidence that after attacking Victim with a knife, Woodson came back to the room to stab, hit, and kick Victim. He then kicked the Victim out of his house onto snow-covered streets. The repeated attacks and forcing a severely injured person out onto the streets were sufficient to establish REAP.

A person is guilty of PIC if "he possesses any instrument of crime with intent to employ it criminally." 18 Pa.C.S. § 907(a). An "instrument of crime" includes "[a]nything used for criminal purposes and possessed by the actor under circumstances not manifestly appropriate for lawful uses it may have." 18 Pa.C.S. § 907(d). Here, the Commonwealth presented sufficient evidence to establish PIC because it presented evidence that Woodson used a knife for criminal purposes.

Accordingly, the Commonwealth presented sufficient evidence to support Woodson's convictions.

### b. Verdict Against the Weight of the Evidence

This court reviews a weight of the evidence claim for an abuse of discretion. *Commonwealth v. Clay*, 64 A.3d 1049, 1054-55 (Pa. 2013). "Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's

- 16 -

determination that the verdict is against the weight of the evidence." *Id.* at 1055 (quoting *Commonwealth v. Widmer*, 744 A.2d 745, 753 (Pa. 2000)).

A trial court should not grant a motion for a new trial "because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion." *Id.* "Rather, 'the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.'" *Id.* (quoting *Widmer*, 744 A.2d at 752). "[A] new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail." *Id.* (quoting *Commonwealth v. Brown*, 648 A.2d 1177, 1189 (Pa. 1994)).

Woodson did not file a post-trial motion arguing that the verdict was against the weight of the evidence. Accordingly, he has waived this claim. *See* Pa.R.Crim.P. 607(A) (providing weight of evidence claims "shall be raised with the trial judge in a motion for a new trial"); *Commonwealth v. Burkett*, 830 A.2d 1034, 1037 (Pa.Super. 2003) (holding weight of evidence claim waived when not presented to trial court). Further, had Woodson not waived the claim, we would conclude it lacks merit. In its Pennsylvania Rule of Appellate Procedure 1925(a) opinion, the trial court found the testimony of Victim and of Officers Sutton, McAllister, and Fidler "entirely reasonable and credible" and concluded that the convictions were not against the weight of the evidence. 1925(a) Op. at 5. This was not an abuse of discretion.

- 17 -

### c. Sentencing Issues

As discussed above, the 40-year maximum sentence imposed for Woodson's attempted murder conviction was legal.

Further, although Woodson received a separate sentence for his REAP conviction, that sentence was also legal. We have stated:

> "If . . . the actor commits multiple criminal acts beyond that which is necessary to establish the bare elements of the additional crime, then the actor will be guilty of multiple crimes which do not merge for sentencing purposes." **Commonwealth v. Belsar**, 544 Pa. 346, 676 A.2d 632, 634 (1996) (quoting **Commonwealth v. Weakland**, 521 Pa. 353, 555 A.2d 1228, 1233 (1989), *overruled on other grounds,* **Commonwealth v. Anderson**, 538 Pa. 574, 650 A.2d 20, 22 (1994)). "When a criminal act has been committed, broken off, and then resumed, at least two crimes have occurred and sentences may be imposed for each. To hold that multiple assaults constitute only one crime is to invite criminals . . . to brutalize their victims with impunity." **Belsar**, 676 A.2d at 634. "[S]o long as the crimes are not greater or lesser included offenses, [defendants] are liable for as many crimes as they are convicted of and may be sentenced for each such crime." **Anderson**, 650 A.2d at 22.

**Commonwealth v. Shank**, 883 A.2d 658, 671 (Pa.Super. 2005) (alterations in original). Here, Woodson attacked Victim with a knife, and after leaving the room, he came back to stab, hit, and kick her. He then kicked the severely-injured Victim out of the house. Such acts were separate from the acts that constituted the aggravated assault and attempted murder. Accordingly, the REAP conviction did not merge for sentencing purposes.

As to any challenge to the discretionary aspects of his sentence, Woodson did not file post-sentence motions and, therefore, has waived those

claims. ***See Commonwealth v. Watson***, 835 A.2d 786, 791 (Pa.Super. 2003) (holding discretionary aspects of sentencing claim waived when not raised in post-sentence motion).

Judgment of sentence affirmed.

Justice Fitzgerald joins in the memorandum.

Judge Ransom concurs in the result.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

*Date:* *12/27/2017*